218 So.2d 771 (1969)
Edgar ROUNTREE, Appellant,
v.
A.P. MOLLER STEAMSHIP COMPANY, a Corporation, and United States Lines, Inc., a Corporation, Appellees.
No. K-111.
District Court of Appeal of Florida. First District.
February 6, 1969.
Rehearing Denied March 4, 1969.
*773 Evans & Stewart and Alan C. Winter, Jr., Jacksonville, for appellant.
Kurz, Toole, Taylor & Moseley, Jacksonville, for appellees.
WIGGINTON, Chief Judge.
Appellant has appealed a final judgment dismissing his amended complaint because of its failure to state a cause of action.
The questioned complaint alleges that defendant A.P. Moller Steamship Company, by and through its agents, servants, and employees, acting within the scope of their employment, negligently operated and navigated their seagoing vessel on the St. Johns River in Duval County under such power and at such speed as to cause a dangerous wake to roll from the vessel which engulfed and capsized a 15-foot outboard motorboat occupied by plaintiff that, at the time and place, was beached on the south bank of the river with its stern afloat and secured by an anchor; as a proximate result of defendant's negligence the boat in which plaintiff was sitting turned upside down over him, dragging him downstream and repeatedly striking him against the bottom of the boat causing plaintiff to be injured in and about his body and extremities from which he suffered substantial damages. An alternative paragraph of the complaint contained identical allegations against the codefendant, United States Lines, Inc.
The Constitution of the United States provides that:
"The judicial Power shall extend * * to all Cases of admiralty and maritime Jurisdiction; * * *."[1]
The Judiciary Act of 1789, presently codified in the United States Code, provides as follows:
"The district court shall have original jurisdiction, exclusive of the courts of the States, of: (1) any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."[2]
The "saving to suitors in all cases" clause of the foregoing statute preserves the right of a litigant seeking an in personam judgment for damages arising from a maritime tort to institute an action in the state court if the common law of the state provides the remedy he seeks. Norris, in his work on maritime personal injuries, says:
"The common law courts had concurrent jurisdiction with courts of admiralty prior to the adoption of the Constitution in causes of action against a shipowner in contract or in tort when he could be reached personally and money damages only were demanded. The constitutional provision gave to the admiralty courts exclusive jurisdiction wherever admiralty had such exclusive jurisdiction prior to the adoption of the Constitution; and when the jurisdiction was concurrent with the common law courts it remained so.
"The common law remedy saved to suitors is the right to proceed in personam against the defendant wherever the common law is competent to give a remedy. Stated another way, one who holds an in personam claim enforceable by a libel in personam in admiralty, can bring suit at his election in a common law court provided that the jurisdictional requirements *774 of the latter court is met and the remedy sought is one which the common law court had concurrent jurisdiction with admiralty at the time of the adoption of the Constitution."[3]
It is an established principle of American jurisprudence that maritime law, not state law, is the substantive law that is applied in cases of a maritime tort occurring on the navigable waters of this country, whether an action thereon is brought in a state or a federal court.[4]
It is agreed that plaintiff's cause of action, if any, being one in personam against the owner of the vessel, and not one in rem against the vessel itself, arises by virtue of and is controlled by F.S. Section 371.52, F.S.A., which is as follows:
"All boats, of whatever classification, shall be considered dangerous instrumentalities in this state and any operator of such boats shall, during any utilization of said boats, exercise the highest degree of care in order to prevent injuries to others. Liability for negligent operation of a boat shall be confined to the person in immediate charge or operating the boat and not the owner of the boat, unless he is the operator or present in the boat when any injury or damage is occasioned by the negligent operation of such vessel, whether such negligence consists of a violation of the provisions of the statutes of this state, or negligence in observing such care and such operation as the rules of the common law require."
The above-quoted section of the statute is but one provision contained in the "Motorboat Safety Law" of Florida which was enacted as Chapter 59-400, General Laws, 1959. This statute has for its purpose the promotion of safety in the operation of motorboats on the waterways of our state. Both the criminal and civil penalties prescribed by the statute are directed toward those persons who recklessly operate motorboats, water skis, aquaplanes, or similar devices in willful or wanton disregard of the safety of other persons and property.
The statute here considered specifically exempts the owner from civil liability resulting from the negligent operation of his boat unless he is the operator or present in the boat when injury or damage occurs, otherwise liability is confined solely to the person in immediate charge of or operating the boat. The trial court interpreted the foregoing statute to impose civil liability only on the natural person in immediate charge of or actually operating the boat at the time its negligent operation causes injury or damage to another. By this interpretation the owner of the boat cannot be held civilly liable for the negligent operation of the vessel by another person unless the owner is a natural person and present in the boat when the damage from its operation is inflicted. The trial court held that the word "person" appearing in the statute was intended to apply only to a natural human being and not to a corporate entity. Under this holding, if damages for the negligent operation of a boat are sought against anyone other than the natural person in charge of or operating it, or the owner if personally present in the boat, it must be by an action in rem against the vessel of which only a United States District Court has jurisdiction.
Appellant contends that the word "person" to whom the statute confines liability for the negligent operation of a boat should be interpreted in light of the definition contained in F.S. Section 371.021, F.S.A., which is as follows:
"As used in this part, unless the context clearly requires a different meaning:
* * * * * *
"(5) `Person' means an individual, partnership, firm, corporation, association, or other entity.

*775 "(6) `Operate' means to navigate or otherwise use a boat or a vessel."
Appellant reasons that by so interpreting the critical word contained in the statute, it would cause the pertinent part of Section 371.52 to read as follows:
"* * * Liability for negligent operation of a boat shall be confined to the individual, partnership, firm, corporation, association, or other entity, in immediate charge or operating, navigating or otherwise using the boat and not the owner of the boat, unless he, she or it is the operator, navigator or is otherwise using, or present in the boat when any injury or damage is occasioned by the negligent operation of such vessel, * * *." [emphasis supplied]
It is our view that the interpretation placed upon the statute by the trial judge is excessively restrictive and defeats the purpose and intent of the statute. By interpreting the word "person" in light of the definition of that term as contained in the statute, a corporate owner of the boat, when acting by and through its agents or employees, occupies the status of the operator or person in charge of the boat to the same extent as a natural person would if actually operating or being personally present in the boat owned by him. Under this construction the owner of a boat, if a natural person, is civilly liable for damages caused by the negligent operation of the vessel only when he is actually operating the boat, or is personally present in it. By the same token, the owner of a boat, if a corporate entity, is civilly liable for damages caused by the negligent operation of the vessel only when it, acting by and through its agents or employees, is actually operating the boat. Liability would attach to the corporate owner when the boat is operated by its agents or employees in connection with its own business, or for its account when acting under a time or voyage charter pursuant to which the corporate owner retains control of the vessel, the master and the crew.[5] By this construction a natural person as owner of the vessel is excluded from civil liability if he is neither operating the boat nor personally present in it at the time its negligent operation causes injury or damages to another. The same is true of a corporate entity who is the owner of the offending vessel. Such owner is likewise excluded from civil liability for the boat's negligent operation provided its agents, employees, or those acting with its permission, were neither operating nor in immediate charge of the boat at the time the damage to others occurs. Such exclusion would shield the corporate owner of the vessel from civil liability when it is negligently operated by a charterer under a demise or bareboat charter pursuant to which the charterer becomes the owner pro hac vice and, as the employer of the master and crew, is responsible for personal injuries caused by their negligence under the doctrine of respondeat superior.[6] The *776 corporate owner might also be shielded from civil liability under circumstances in which the vessel is being operated and in charge of a bar pilot whose services have been engaged pursuant to a compulsory pilotage law.[7]
In defense of the judgment appealed, appellees invite attention to those allegations of the complaint which establish that at the time of the alleged negligent operation of its boat it was seaward bound under circumstances that would require the services of a bar pilot under what is characterized as the compulsory pilotage law of Florida.[8] Appellees argue that the trial court was justified in drawing the inference that at the time of its alleged negligence the boat was being operated by and under the control of a bar pilot, and therefore no civil liability attached to appellees under the statute for the operation of the vessel at the time and place alleged in the complaint. If appellees' assumptions be correct, a matter on which we do not pass at this time, the facts supporting its position should more properly be pleaded as an affirmative defense to the complaint, and may not be assumed by inference as a matter of judicial notice in considering the motion to dismiss.
Because of the foregoing reasons, the judgment of dismissal appealed herein is reversed and the cause remanded for further proceedings.
JOHNSON and SPECTOR, JJ., concur.
NOTES
[1] Article III, Section 2, United States Constitution.
[2] Title 28  U.S.C.A., Sec. 1333.
[3] Norris, Maritime Personal Injuries 209, Second Edition, Sec. 84.
[4] Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550; Cashell v. Hart (Fla. App. 1962), 143 So.2d 559.
[5] "TIME CHARTER. The vessel is chartered or `leased' to the charterer for a fixed period of time. Custody and control remains with the vessel owner. The vessel owner hires, pays and is the employer of the master and crew. The owner pays all of the operating expenses of the vessel and the time charterer merely has the use of the vessel in return for his payment of the charter hire.

"VOYAGE CHARTER. It is similar in all respects to the time charter, except that the ship is hired for a single voyage.
"The factor of control is very important in distinguishing the demise charter from the time and voyage charters. If the vessel owner retains the possession, command and navigation of the ship, merely carrying the charterer's goods, then, irrespective of how the charter party may be labeled it is either a time or voyage charter and not a bareboat charter. But if the control of the ship is turned over to the charterer who exercises authority over the master, then we have a demise or bareboat charter."
Norris, Maritime Personal Injuries 212, Second Edition, Sec. 85.
[6] "DEMISE OR BAREBOAT CHARTER. The vessel is chartered or `leased' to another who takes possession, custody and control of the vessel. The master is hired and paid by the charterer and is the agent and representative of the charterer. The demise charterer becomes the employer of the master and the crew. As owner pro hac vice he is responsible for personal injuries caused by them under the doctrine of respondeat superior. The operating expenses of the vessel, such as wages, fuel, subsistence, wharfage charges, etc., are paid by the charterer. The owner surrenders entire control and possession of the vessel and subsequent control over its navigation to the bareboat charterer, who becomes the owner pro hac vice."

Norris, Maritime Personal Injuries 212, Second Edition, Sec. 85.
[7] Homer Ramsdell Transportation Co. v. LaCompagnie Generale Transatlantique, 182 U.S. 406, 21 S.Ct. 831, 45 L.Ed. 1155.
[8] F.S. Chapter 310, F.S.A.