296 So.2d 641 (1974)
Dorothy BURTON and Jerry B. Burton, Appellants,
v.
John L. VARNER, Jr., et al., Appellees.
No. 73-1340.
District Court of Appeal of Florida, Third District.
May 28, 1974.
Rehearing Denied July 19, 1974.
*642 George B. Weires, Miami, for appellants.
Wicker, Smith, Pyszka, Blomqvist & Davant, Miami, for appellees.
Before CARROLL and HENDRY, JJ., and BOARDMAN, EDWARD F., Associate Judge.
HENDRY, Judge.
Appellant-plaintiffs seek review of an adverse summary judgment on a complaint seeking damages for personal injuries sustained while water skiing.
Deposition testimony before the trial judge on the defendant-appellees' motion for summary judgment revealed that plaintiff, Dorothy Burton, was injured when she collided with a metal pipe protruding from the yard of a private home along the surface of a lake in a Palm Springs North development.[1] Mrs. Burton was having a family reunion at her home, which also backed into the lake, when the accident occurred.
The plaintiff and her sister-in-law, Sylvia Varner, were skiing, and being pulled behind a 17-foot motor boat operated by defendant, James C. Varner, the plaintiff's nephew. Plaintiffs' complaint alleges that the boat in question was owned by Sylvia Varner and John L. Varner, the plaintiff's brother. The record is clear that John Varner neither was operating nor was he present in the boat when the accident happened.
Appellees rely on Fla. Stat. § 371.52, F.S.A. to relieve John and Sylvia Varner of liability in this case, and we agree that it does. The statute declares boats to be dangerous instrumentalities and imposes a duty upon any operator to exercise the highest degree of care to prevent injury. It further provides:
"... Liability for negligent operation of a boat shall be confined to the person in immediate charge or operating the boat and not the owner of the boat, unless he is the operator or present in the boat when any injury or damage is occasioned by the negligent operation of such vessel ..." [Emphasis added.]
It is the appellants' contention that the definition of the word "operate"[2] contained in Ch. 371 would bring at least Sylvia Varner within the provision of Section 371.52 imposing liability on the owner of a boat.
First, we would point out the fact that Section 371.52 creates liability upon a boat owner who is a natural person only if the owner is actually operating the boat or is personally present in it. Rountree v. A.P. Moller Steamship Company, Fla.App. 1969, 218 So.2d 771; see also, Jowanowitch v. Florida Power & Light Company, Fla. App. 1973, 277 So.2d 799.
Next, while the complaint alleges that Sylvia Varner is a co-owner of the boat in question along with her husband, our review of the record does not indicate ownership in anyone other than John L. Varner.
Lastly, the testimony shows that prior to Mrs. Burton's collision with the metal pipe causing her injuries, Mrs. Varner had fallen off her skis into the water, *643 and therefore, we do not think that at the time of the accident she could be said to be "operating" the boat.
Appellants also may not base liability upon the ground that Mr. and Mrs. Varner were negligent in entrusting the boat to an incompetent operator, which proximately resulted in the plaintiff's injuries. Jowanowitch v. Florida Power & Light Company, supra; Fla. Stat. § 371.504, F.S.A. The record demonstrates that James C. Varner owned his own boat and had pulled water skiers on previous occasions.
We turn our attention next to the appellants' argument that genuine issues of material fact existed with respect to the alleged negligent operation of the boat by James Varner. The record reveals that Mrs. Burton was thrust outside of the motorboat's wake during a turning maneuver.
James' brother, Dewey Varner, himself an excellent skier, also was present on the boat, and at the time of the accident he was in charge of the ski ropes. James described Dewey's primary responsibility as notifying him when one of the skiers had fallen so he could return to pick her up out of the water. James added, "My primary responsibility was just watching where I was going."
The testimony taken of Mrs. Burton fails to reveal any specific act of negligence or recklessness by James Varner in driving the motorboat. James testified that he first saw the metal pipe when he was 30 to 40 feet away from it, that the boat was traveling 20 to 25 miles an hour, and that when he looked around and realized that his aunt had been pulled outside the boat's wake and was in danger of striking the pipe he immediately pulled the throttle of the boat.
After having afforded the appellants all reasonable inferences as the non-moving parties on the motion for summary judgments, we have concluded that the trial court was correct in determining that no genuine issue of material fact existed regarding the alleged negligent operation of the motorboat.
Therefore, for the reasons stated and upon the authorities cited, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] The appellants presently have pending in the trial court a suit based upon three other counts of their complaint against Joseph and Betty Matrascia, who allegedly owned and occupied the real property from which the pipe extended. According to the complaint, the pipe was used by the Matrascias to provide water for their lawn-sprinkler system.
[2] See, Fla. Stat. § 371.021(6), F.S.A., which reads as follows:

"`Operate' means to navigate or otherwise use a boat or a vessel."