PER CURIAM.
We have for review three consolidated appeals arising out of a maritime accident. In Case No. 81-659 Miami Valley Broadcasting Corporation d/b/a WIOD and its insurer, Continental Casualty Company, seek review of a final judgment, an amended final judgment, and a cost judgment in favor of appellee, Lincoln Lang. The other two appeals, Case Nos. 82-1178 and 82-1191, were perfected by WIOD, Continental, and Lincoln Lang, to review an order reducing the amended final judgment by a set-off arising out of a medical malpractice settlement recovered by Lang.
WIOD, a Miami based radio station, sponsored a promotional event called “The Great Race.” The event was to include a number of WIOD disc jockeys boating down the intercoastal waterway from the Bahia Mar Yachting Center in Fort Lauderdale to the Miami Marine Stadium, with scheduled stops along the way for promotional activities by the disc jockeys. In consideration for radio advertising time Bahia Mar fur *1335 nished five boats with operators for the trip. Each of four boats in the “race” had one of the disc jockeys as a passenger and the fifth boat, bringing up the rear, in addition to the operator furnished by Bahia Mar had a passenger list made up of two WIOD personnel, an owner of the Bahia Mar, and appellee, Lang. Lang, a stranger to any of the parties, heard about the event on the radio and because of his experience in the Coast Guard called Bahia Mar to offer his services. Although the offer was declined, on the day of the event Lang went to the Bahia Mar and either asked to participate and was allowed to do so or one of the Bahia Mar owners asked him to ride in one of the boats. In any event, he boarded the fifth boat.
While proceeding down the waterway, the boat in which Lang was riding encountered a severe wake from another boat, not involved in the event, and, while the boat was crossing the wake, Lang was thrown from his seat in the bow onto the boat deck, injuring his buttocks. The injuries eventually spread throughout Lang’s body resulting in some twenty operations and an ultimate 80-85% vocational disability.
This litigation commenced when Lang sued WIOD, Continental, Bahia Mar Small Boat Rentals, Inc., and Coloso Boat Corporation (the manufacturer of the boat in question). During the course of the trial Lang settled with Bahia Mar for $100,000. The jury returned a verdict for $850,000 against the remaining defendants, apportioning fault as follows: Coloso 25%; WIOD 60%; and Lang 15%. An amended final judgment was entered against the remaining defendants for $622,500.
The only defendants involved in this appeal are WIOD and Continental. The errors assigned are: a) refusal of the trial court to grant WIOD’s motions for directed verdict, b) allowing Lang to present Section 371.55, Florida Statutes (1979)[1], to the jury, and c) the entry of the cost judgment in favor of Lang.
WIOD contends that its motions for directed verdict should have been granted because this accident occurred in navigable waters and is thus controlled by the law of admiralty. Given the foregoing, under the facts of this case, the agreement between Bahia Mar and WIOD resulted in a voyage or time charter fixing liability for the negligence in question upon Bahia Mar as the boat owner. Furthermore, submission of Section 371.55, Florida Statutes (1979), to the jury was error because that statute imposed a stricter burden upon WIOD than that provided by maritime law. On the other hand, Lang argues that the case was not tried under admiralty law but rather was tried on an agency and right of control theory. In addition, Lang contends the statute in question was properly admitted in evidence because it does not create an additional burden contrary to maritime law. Lang also argues that Section 371.55 was passed pursuant to an agreement between the State and the Coast Guard as authorized by 33 CFR, § 100.10.
It is beyond question that the wrong complained of was a maritime tort, occurring in navigable waters, which makes the claim subject to federal admiralty jurisdiction. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Cashell v. Hart, 143 So.2d 559 (Fla. 2d DCA 1962). When such cases are filed in a state court, maritime law, not state law, is the substantive law to be applied. Still v. Dixon, 337 So.2d 1033 (Fla. 2d DCA 1976); Rountree v. A.P. Moller Steamship Company, 218 So.2d 771 (Fla. 1st DCA 1969). Thus, the proper law to be applied in this case is federal admiralty law.
The evidence reflects that the owner of the boats used in this event was Bahia Mar. In addition, Bahia Mar furnished the operator of the boat in question and he was directed in its operation by Bahia Mar. Thus, the evidence is clear that the charter arrangement involved was not a *1336 demise or bareboat charter[2] but a voyage or time charter.[3] Inconsequential directions such as time of departure, the route to be taken, and where to stop en route are normal prerogatives of a time or voyage charter. Fitzgerald v. A.L. Burbank & Co., 451 F.2d 670, 676 (2d Cir.1971). We find that the cases are uniform in holding that to immunize an owner from liability and make the charterer (demisee) liable for negligence in the operation of the boat or its unseaworthiness the owner of the boat must completely and exclusively relinquish possession, command, and navigation to the demisee. Guzman v. Pichirilo, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962). Guzman characterizes a demise charter transfer as “tantamount to, though just short of, an outright transfer of ownership.” In any view of the evidence the arrangement between Bahia Mar and WIOD was a voyage or time charter and not a demise charter. Even under Lang’s version of joint control, which is weak at best, the facts are insufficient to transfer liability from owner to charterer. Therefore, the negligence of Bahia Mar’s boat operator was the owner’s (Bahia Mar’s) responsibility and is not to be visited upon the charterer, WIOD. Thus, the trial court erred in refusing to grant WIOD’s motions for directed verdict.
Lang’s major argument is not against the applicability of maritime law to this case, but rather he contends that WIOD did not plead maritime law nor claim its applicability.
Unquestionably, it would have been most appropriate for WIOD to set up maritime law as an affirmative defense. Jowanowitch v. Florida Power & Light Company, 277 So.2d 799 (Fla. 4th DCA 1973); Rountree v. A.P. Moller Steamship Company, 218 So.2d 771 (Fla. 1st DCA 1969). However, before the trial ever began WIOD, in arguing for summary judgment, advised the trial court that the substantive law to be applied was federal maritime law. Thereafter, on several occasions during arguments of law WIOD contended the law of admiralty controlled the case. Actually, Lang never contended that maritime law was not applicable or that WIOD had failed to sufficiently plead it; instead he argued that the real issue was control. Therefore, although the record leaves something to be desired from the standpoint of clarity, we believe there was no waiver of the substantive law of admiralty and that it does control the decision in this case.
Lang contends that WIOD is liable under Section 371.55, Florida Statutes (1979), which provides:
*1337 371.55 Regattas, races, marine parades, tournaments or exhibitions. — Any person directing the holding of a regatta, tournament or marine parade or exhibition, shall secure a permit from the Coast Guard when such event is held in navigable waters of the United States. A person directing any such affair in any county shall notify the sheriff of the county, the Game and Fresh Water Fish Commission, or the department at least 15 days prior to any event in order that appropriate arrangements for safety and navigation may be assured. Any person or organization sponsoring a regatta or boat race, marine parade, tournament or exhibition shall be responsible for providing adequate protection to the participants, spectators and other users of the water.
The argument goes that, since it sponsored “The Great Race,” WIOD was under a duty to provide adequate protection for all of the participants, spectators, and other users of the water. The trial judge apparently agreed and thus allowed Lang to read that statute to the jury and argue liability based thereon in closing argument.
We hold the statute inapplicable because, under the facts of this case and maritime law, as discussed above, WIOD was not liable for the operation of the boats. Applying Section 371.55 to this case would make the state law inconsistent with maritime law and place an additional burden upon WIOD. A state statute may not be so applied in a case subject to maritime jurisdiction. In Branch v. Schumann, 445 F.2d 175 (5th Cir.1971), the appellate court affirmed the trial court’s refusal to charge the jury on Section 371.52, Florida Statutes, in a case subject to federal maritime jurisdiction. That statutory section imposed a duty on the operator of a boat to exercise “the highest degree of care” to prevent injuries to others. But the standard of care under maritime law is simply “reasonable care.” Thus, the court held the statute imposed a stricter burden upon the operator of a boat and conflicted with maritime law, making it inapplicable. Finally, Lang contends that Section 371.55 was admissible in this case because a federal statute, 46 U.S.C., § 454, authorized the Secretary of Commerce and Labor to issue regulations to promote safety on navigable waters during regattas and marine parades; that, pursuant to said statute, the Secretary promulgated 33 CFR 100 controlling regattas and parades. Subsection 10 thereof authorizes the Coast Guard District Commander to enter into agreements with state authorities permitting regulation of regattas and parades by the states. However, there is no showing of any such agreement between the Coast Guard District Commander and the State of Florida authorizing the state to promulgate any regulations controlling regattas and marine parades. Accordingly, we reject Lang’s contention that WIOD was liable under Section 371.55, Florida Statutes.
For the foregoing reasons we reverse the amended final judgment and the cost judgment against WIOD.
As indicated earlier, Lang sued his doctors and a hospital for malpractice arising out of medical care that he received after the boat accident. That claim was settled for $200,000. Upon motion by WIOD, the trial court further reduced Lang’s jury award by $127,500,[4] pursuant to Section 768.31(5), Florida Statutes (1981). The trial court found that the injuries claimed for the medical malpractice had been included in the claim against WIOD and Coloso and presumably comprised a portion of the jury verdict. Therefore, under Section 768.31(5), the judgment should be reduced by the amount of the medical malpractice settlement. We believe the trial court acted correctly in so reducing the judgment and affirm that order.
*1338 The amended final judgment and cost judgment are reversed as to WIOD and Continental and the order reducing the judgment by the amount of the medical malpractice settlement is affirmed.
DOWNEY, HERSEY and WALDEN, JJ., concur.

. Renumbered as Section 327.48, Florida Statutes (1981).

. “DEMISE OR BAREBOAT CHARTER. The vessel is chartered or ‘leased’ to another who takes possession, custody and control of the vessel. The master is hired and paid by the charterer and is the agent and representative of the charterer. The demise charterer becomes the employer of the master and the crew. As owner pro hac vice he is responsible for personal injuries caused by them under the doctrine of respondeat superior. The operating expenses of the vessel, such as wages, fuel, subsistence, wharfage charges, etc., are paid by the charterer. The owner surrenders entire control and possession of the vessel and subsequent control over its navigation to the bare-boat charterer, who becomes the owner pro hac vice.” Norris, Maritime Personal Injuries 212, Second Edition, Sec. 85. — Rountree v. A.P. Moiler Steamship Company, 218 So.2d 771, 775-776, fn. 6.

. “TIME CHARTER. The vessel is chartered or ‘leased’ to the charterer for a fixed period of time. Custody and control remains with the vessel owner. The vessel owner hires, pays and is the employer of the master and crew. The owner pays all of the operating expenses of the vessel and the time charterer merely has the use of the vessel in return for his payment of the charter hire.
“VOYAGE CHARTER. It is similar in all respects to the time charter, except that the ship is hired for a single voyage.
“The factor of control is very important in distinguishing the demise charter from the time and voyage charters. If the vessel owner retains the possession, command and navigation of the ship, merely carrying the charterer’s goods, then, irrespective of how the charter party may be labeled it is either a time or voyage charter and not a bareboat charter. But if the control of the ship is turned over to the charterer who exercises authority over the master, then we have a demise or bareboat charter.” Norris, Maritime Personal Injuries 212, Second Edition, Sec. 85. — Id. fn. 5.

. Lang agreed to return $72,500 to the doctors and the Florida Compensation Fund from any recovery he eventually made against WIOD.