TORPY, J.
Bergetta B. Mihelich (“Mihelich”), as personal representative of the estate of her husband Gerald J. Mihelich (“Gerald”), appeals the entry of summary judgment dismissing her multi-count complaint arising from the fatal injuries received by Gerald while water skiing in a competitive event. We affirm the lower court in all respects except as to the disposition of Count VI against Sunset Lakes Ski Club, Inc. (“SLSC”).
In 2001, SLSC submitted a bid to USA Water Ski, Inc., the governing body for organized water skiing in the United States, to host the “Florida State Water Ski Championships.” SLSC’s bid was accepted and USA Water Ski, Inc. sanctioned the championship tournament. The tournament was held on July 14 and 15, 2001, at Sunset Lakes near Groveland, Lake County, Florida. Sunset Lakes are man-made lakes situated on land owned by International Tournament Skiing, Inc. (“ITS”). Gerald was a participant in the tournament. He skied on the second day of the tournament and was the 100th of 101 competitors to ski. While skiing in the tournament, Gerald fell near the shoreline and ultimately died from injuries he sustained from the fall.
Records and deposition testimony denote SLSC as the “sponsor” of the tournament and John Travers as the Tournament Director. John and Lelani Travers are members and officers of SLSC and officers of ITS. Denise Bro was the safety director for the tournament. Brenda Baldwin was one of the judges for the tournament. Baldwin, John Travers, and Lester Todd, III, were in the tow boat pulling Gerald at the time of the accident. Todd was driving the boat. Baldwin was sitting next to Todd but was facing Gerald to judge his performance. John Travers was sitting next to Baldwin and was a “spotter” in charge of the lines. Only Baldwin and John Travers were eyewitnesses to the accident as they were watching Gerald when he fell.
In their depositions, both Baldwin and John Travers stated that Gerald completed his first pass without incident. He was then reminded to ski within the wake of the boat. When the boat began the second pass, Gerald, with his head down, cut out *839 side the wake and started skiing directly for the shore. His ski eventually hit bottom and he fell. In his deposition, Todd stated that he heard Baldwin exclaim, “Oh no! Oh no!” He then turned around and saw Gerald skiing outside the wake of the boat. He immediately throttled back to decelerate the boat, but that was just before Gerald fell. Todd then throttled back up, turned the boat around and headed toward Gerald to render first aid.
All tournament participants, including Gerald, executed a “Uniform Participation and Hold Harmless Agreement” (“Agreement”) prior to competing in the tournament. In the Agreement, each participant agreed to be responsible for his own safety, to assume the risk of serious injury or death as a result of participating in the event, and to “release, hold harmless, protect, indemnify and forever discharge” the sponsors, organizers, officials, members, co-participants, site owner, and all persons connected with the tournament, “from any and all rights, claims and demands of any nature for any and all loss, damage or injury sustained by the participant.”
The trial court, in several different orders, granted summary judgment as to all of the counts as to all of the defendants. We affirm the summary judgments entered in favor of defendants John Travers, Lelani Traverse, Denise Bro, Brenda Baldwin, ITS, and USA Water Ski, Inc., based on the reasons given and authorities cited by the trial court. We also affirm the summary judgment in favor of defendant Lester Todd, III, but based on the lower court’s determination that the undisputed record evidence shows that Todd did not deviate from the standard of care established by the applicable statutes and common law. See Burton v. Varner, 296 So.2d 641 (Fla. 3d DCA 1974).
We do, however, agree with Mihelieh that the lower court erred in dismissing Count VI, but only as it relates to SLSC. In Count VI, Mihelieh alleged that SLSC violated a portion of section 327.48, Florida Statutes, by, among other things, failing to warn Gerald of shallow water and sandbars that might create a hazard to skiers. The lower court ruled, however, that an action pursuant to section 327.48 was not available to Mihelieh because the statute only applies to “navigable waters,” a category within which Sunset Lakes do not fall. Mihelieh agrees that Sunset Lakes are not navigable but contends that the trial court erred in its legal conclusion that the material part of section 327.48 is limited in application to navigable waters.
Section 327.48 provides as follows:
Any person directing the holding of a regatta, tournament, or marine parade or exhibition shall secure a permit from the Coast Guard when such event is held in navigable waters of the United States. A person directing any such affair in any county shall notify the sheriff of the county or the Fish and Wildlife Conservation Commission at least 15 days prior to any event in order that appropriate arrangements for safety and navigation may be assured. Any person or organization sponsoring a regatta or boat race, marine parade, tournament, or exhibition shall be responsible for providing adequate protection to the participants, spectators, and other users of the water.
§ 327.48, Fla. Stat. (2003). (Emphasis added). The trial court determined that the use of the word “navigable” in the first sentence of this paragraph manifests an intent by the legislature that the third sentence, upon which Mihelich’s claim was based, is likewise only applicable to “navigable waters.” This construction, in our view, improperly ignores the plain language of the statute. Moreover, other portions of chapter 327 clarify that the *840 legislature did not intend to limit the third sentence in this manner.
Section 327.58, Florida Statutes, provides that the safety regulations of chapter 327 “shall apply to all vessels, except as specifically excluded, operating upon the waters of this state.” (Emphasis added). Section 327.02(38), Florida Statutes, defines “waters of this state,” to include “navigable waters of the United States within the territorial limits of this state ... and all the inland lakes, rivers, and canals under the jurisdiction of this state.” (Emphasis added). SLSC concedes that section 327.48 is a safety regulation, and we conclude that Sunset Lakes fall within the definition of “waters of this state.” Therefore, the third sentence of section 327.48 is applicable to the event conducted here. '
Having determined that the statute is applicable, it follows that the “sponsor” of the event, SLSC, is liable for damages that proximately result from a violation of the statute.[1] Furthermore, the release signed by Gerald is not a defense. Torres v. Offshore Professional Tour, 629 So.2d 192 (Fla. 3d DCA 1993).
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
PALMER and ORFINGER, JJ., concur.

. We express no view as to whether sufficient evidence has been proffered to create a jury issue of a statutory violation or proximate causation.