**Elmer T. BRANCH, Plaintiff-Appellant,**

v.

**Alfred SCHUMANN, Defendant-Appellee.**

**No. 30757.**

United States Court of Appeals, Fifth Circuit.

June 29, 1971.

**176**

Reginald M. Hayden, Jr., Miami, Fla., for plaintiff-appellant; Fowler, White, Humkey, Burnett, Hurley & Banick, P. A., Miami, Fla., of counsel.

Lake Lytal, Jr., West Palm Beach, Fla., for defendant-appellee; Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, West Palm Beach, Fla., of counsel.

Before WISDOM, Circuit Judge, DAVIS,* Judge, and GOLDBERG, Circuit Judge.

GOLDBERG, Circuit Judge:

In this diversity case we consider the thrust and counterthrust of general maritime law and the statutory tort law of Florida with respect to an accident occurring on navigable waters of that state. After reviewing the jousting, we conclude that maritime law prevails.

This appeal by plaintiff Elmer Branch is the latest link in a chain of events which erupted from a violent explosion occurring aboard a vessel christened the KON-TIKI. Unlike her notorious namesake, the craft owned by defendant Alfred Schumann was a 30 foot pleasure boat whose voyages were confined primarily to the waters in and surrounding West Palm Beach, Florida. The undisputed facts show that on a morning in April, 1968, the plaintiff and defendant boarded the KON-TIKI for the purpose of partaking in the piscatorial pleasures of the Gulf Stream. The plaintiff guided the vessel across Lake Worth, and while approaching Palm Beach Inlet, the craft's engines began sputtering. Taking control of his vessel, the defendant gunned the engines but they stalled, leaving the boat in the middle of the ship channel. After one unsuccessful attempt to restart the engines, the defendant turned the ignition key again and a flaming explosion burst forth from the forward cabin.

As a result of this detonation, Elmer Branch received myriad personal injuries, including second and third degree burns, for which he now seeks to recover. He alleged that his injuries were the proximate result of Schumann's negligent failure to ventilate the engine compartment of accumulated gas fumes before attempting to restart the engines.

A jury trial resulted in a verdict and judgment for the defendant, and plaintiff appeals, alleging (1) that the trial court erred in denying plaintiff's motions for a directed verdict and judgment notwithstanding the verdict, and (2) that the trial judge also erred in failing to instruct the jury that the defendant owed the plaintiff the highest degree of care pursuant to Fla.Stat.Ann. § 371.52.[1] We disagree with these contentions and accordingly affirm.

---

* Honorable Oscar H. Davis, U. S. Court of Claims, sitting by designation.

1. Fla.Stat.Ann. § 371.52 provides:
   All boats, of whatever classification, shall be considered dangerous instrumentalities in this state and any operator of such boats shall, during any utilization of said boats, exercise the highest degree of care in order. to prevent injuries to others. Liability for negligent operation of a boat shall be confined to the person in immediate charge of operating the boat and not the owner of the boat, unless he is the operator or present in the boat when any injury or damage is occasioned by the negligent operation of such vessel, whether such negligence consists of a violation of the

The validity of plaintiff's assertion that the trial court should have granted his peremptory motions is governed by this court's en banc decision in Boeing Company v. Shipman, 5 Cir. 1969, 411 F.2d 365, 374–375:

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses."

In applying the *Boeing* standard to a negligence case, we must bear in mind that negligence is a compound of many variables with few if any certitudes in its determination. Because prototypes and paradigms are exotic birds in an almost boundless aviary of negligence cases, it is a rare case indeed that justifies a court in finding negligence as a matter of law. Dvorak v. Holiday Inns of America, Inc., 5 Cir. 1970, 429 F.2d 54, 56.

■ In the instant case the plaintiff adduced expert testimony to the effect that the defendant's failure to ventilate the engine compartments was a "suicidal" act which caused the explosion. However, the plaintiff himself testified that the defendant's attempt to restart the engines was a "natural" reaction to the situation and that there was no time in which to open the hatches, apparently because the boat was adrift in the middle of a ship channel which was bordered by a jagged, rocky coastline. We feel that this evidence and the accompanying inferences could very well create uncertainty in the minds of reasonable men as to whether the defendant's omission constituted negligence under the circumstances. When uncertainty arises because fair-minded men may honestly draw different conclusions from undisputed facts, the resolution of the conflict falls within the exclusive province of the jury. Richmond & Danville R. Co. v. Powers, 1893, 149 U.S. 43, 45, 13 S.Ct. 748, 37 L.Ed. 642; Dvorak v. Holiday Inns of America, Inc., *supra*, 429 F.2d at 56; Taylor v. Bair, 5 Cir. 1969, 414 F.2d 815, 817; Arkwright Mutual Ins. Co. v. Philadelphia Electric Co., 3 Cir. 1970, 427 F.2d 1273, 1275. Therefore, this Court will not disturb the jury's conclusion, and we hold that the trial court properly denied the plaintiff's motions for a directed verdict and for judgment notwithstanding the verdict.

■■ Turning now to the plaintiff's second contention, concerning the applicability of the Florida statute, we first note that admiralty retains exclusive jurisdiction of this accident since the alleged tort occurred on navigable waters. The Plymouth, 1866, 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125; Kermarec v. Compagnie Generale Transatlantique, 358 U.

provisions of the statutes of this state, or negligence in observing such care and

such operation as the rules of the common law require.

S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550. This proposition is true notwithstanding the diversity character of the litigation and the fact that a party exercised his right to a jury trial. Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 410–411, 74 S.Ct. 202, 98 L.Ed. 143. Once admiralty jurisdiction is established, then all of the substantive rules and precepts peculiar to the law of the sea become applicable.

■ Turning to the instant case and the maritime standard of care with which the defendant was charged, we are guided by the Supreme Court's decision in Kermarec v. Compagnie Generale Transatlantique, *supra.* In *Kermarec* the plaintiff, as a guest aboard a vessel berthed in the North River, New York City, was injured while descending a stairway. The Supreme Court held that the district court erred in applying the law of the state of New York. Noting that Kermarec's injury was the result of conduct which occurred aboard a vessel upon navigable waters, the Court held that "the legal rights and liabilities arising from that conduct were therefore within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law." The Court then formulated the following basis of liability: "We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case."

The plaintiff herein does not question the continued vitality of the *Kermarec* rule. Rather, he asserts that the Florida statute which imposes the highest degree of care on an owner-operator of a motorboat does not "contravene" or dilute the established admiralty law, but merely "supplements" or "expands" the *Kermarec* rule. However, we are unimpressed with the plaintiff's linguistic gyrations.

We cannot agree that the Supreme Court in *Kermarec* simply set forth a minimum standard of care which any state, in its discretion, may supplement by imposing a stricter burden on the owner of a vessel in relation to his conduct toward guests. Any such supplementation necessarily entails alteration of an admiralty norm in direct contravention of the quest for uniformity and the Supreme Court's *Kermarec* mandate that the defendant's conduct be measured by maritime standards. Since we fail to see how application of the Florida statute would not impose on the defendant a burden which maritime law does not require, we conclude that the district court was correct in charging the jury that the defendant owed the plaintiff only the duty to use reasonable care under the circumstances, and that the jury's verdict based on this instruction must stand.

For the reasons stated herein, the judgment of the district court is affirmed.

Affirmed.