Mary Carrol SULLIVAN, Plaintiff,

v.

**AJAX NAVIGATION CORP.**
and Celebrity Cruises
Inc., Defendants.

No. 93 Civ. 5262 (DAB).

United States District Court,
S.D. New York.

March 31, 1995.

James P. Kreindler, Kreindler & Kreindler, New York City, for plaintiff.

William M. Kimball, New York City, for defendant.

## OPINION AND ORDER

BATTS, District Judge:

Defendants Celebrity Cruises, Inc. and Ajax Navigation Corp. move this Court to dismiss plaintiff's personal injury claim. Alternatively, defendants move to strike plaintiff's demand for a jury trial and requests an order that liability be governed by Mexican substantive law. By letter dated March 23, 1995, plaintiff's counsel consented to the dismissal of defendant Ajax Navigation Corp. It is therefore ordered that defendant Ajax Navigation Corp. be and hereby is dismissed from this action. However, for the reasons which follow, Celebrity Cruise Inc.'s ("defendant") motion is denied in its entirety.

## I. FINDINGS OF FACT

On March 14, 1993, Mary Sullivan ("plaintiff"), a Massachusetts resident, went on a five day cruise with Ann Hawley on the "S/S BRITANIS". At all times relevant to this action, the BRITANIS was operated by the defendant. The cruise ship left Miami on March 14, 1993, for the ports of Key West, Playa del Carmen, Cozumel, and return to Miami. Ms. Hawley purchased both tickets and kept them in her possession until the women boarded the ship.

As part of the cruise, defendant had arranged for the passengers to go ashore. However, cruise ships such as the BRITANIS calling at Playa Del Carmen must anchor offshore, because of shallow water. A smaller boat, known as a tender, was used to shuttle passengers from the cruise ship to the dock. On March 16, plaintiff went ashore at the port of Playa del Carmen, aboard a tender called the "MEXICO II." Employees of the BRITANIS, including Hagay Meiri, an escort officer, and Diane Hawkins, a nurse, were stationed on the dock.

Plaintiff returned to the dock to await transport back to the cruise ship. However, the tender operated more slowly than usual, because of the rough seas and inclement weather. Plaintiff sat reading a book on a bollard[1] to which another tender, the "PLAYA DEL CARMEN[2]" was moored. Plaintiff's injury occurred when one of the mooring lines from the PLAYA DEL CARMEN snapped, recoiled, and struck plaintiff's right foot. She was thrown from the bollard and sustained an open displaced fracture of her right ankle. There is no indication in the record that employees of the BRITANIS either advised plaintiff against sitting on the bollard or warned plaintiff of the dangers inherent in sitting there.

Plaintiff instituted this personal injury action in federal court, claiming jurisdiction based on diversity of citizenship. Plaintiff timely demanded a jury trial. The cruise ticket, which was purchased and held for her by Ms. Hawley, however, provides that any action against the carrier must be "instituted in the United States District Court for the Southern District of New York as an admiralty or maritime action without demand for a jury trial." The cover of the ticket states in large block letters: "IMPORTANT NOTICE: Please read the terms and conditions of transportation in this ticket which is a contract affecting your legal rights." This notice is repeated in the embarkation coupon.

## II. ANALYSIS

### A. SUMMARY JUDGMENT

As a preliminary matter, the defendant has made what it terms a "pre-trial motion to dismiss," claiming that Celebrity Cruise did not owe a duty to plaintiff when she was injured. Since plaintiff's sole cause of action sounds in negligence, defendant argues that it cannot be held liable as a matter of law. Defendant's motion is properly cognizable as one for summary judgment, and will be treated accordingly pursuant to Fed.R.Civ.P. 56.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir.1991). When deciding a motion for summary judgment, a court must " 'resolve all ambiguities and inferences ... in the light most favorable to the party opposing the motion.' " *Shockley v. Vermont State Colleges*, 793 F.2d 478, 481 (2d Cir.1986) (citations omitted).

The moving party bears the initial burden of demonstrating that there exists no material issue of fact and that he or she is entitled to judgment as a matter of law. *See Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (citations omitted). The movant may carry its burden by demonstrating the absence of evidence to support the non-movant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Motions for summary judgment must be denied if reasonable minds could differ as to the importance of the evidence and if " 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn.' " *Brady v. Town of Colchester*, 863 F.2d at 210, *citing In re Japanese Elec. Prods. Antitrust Litigation*, 723 F.2d 238 (3rd Cir.1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538.

■ It is well settled that a common carrier generally owes a high duty of care to provide its passengers with safe transportation under adequate supervision to and from a dock or pier. *Lawlor v. Incres Nassau Steamship Line, Inc.*, 161 F.Supp. 764, 767 (D.Mass.1958); *Isham v. Pacific Far East Line, Inc.*, 476 F.2d 835, 836 (9th Cir.1973); *Forrester v. Ocean Marine Indemnity Co.*, 11 F.3d 1213, 1216 (5th Cir.1993). Such duty extends at least to the point of embarkation and debarkation. It does not cease at each port of call where the passengers are free to disembark. Rather, it is owed for the extent

---

1. A bollard is a thick post on a dock for securing ropes.

2. The PLAYA DEL CARMEN weighs approximately 276 tons.

of the voyage. *Isham v. Pacific Far East Line*, 476 F.2d at 837; *Carlisle v. Ulysses Line, Ltd.*, 475 So.2d 248, 251 (Fla.Dist.Ct. App.1985).

██ Defendant argues that since plaintiff was neither embarking nor disembarking from the BRITANIS at the time of her injury, it did not have a duty to provide her with adequate supervision. Relying on the Jones Act, defendant urges this Court that any duty it owed to the plaintiff ceased at the tender's gangplank. *See Wheeler v. West India S.S. Co.*, 103 F.Supp. 631, 634 (S.D.N.Y.1951). Moreover, defendant states, since plaintiff's injury occurred on a dock owned and controlled by the Mexican government, it cannot be held liable for plaintiff's injuries.

This Court does not accept the applicability of Jones Act case law to the situation at bar. Unlike the authority cited by the defendant, this passenger's claim is based on a duty of a common carrier to insure the safety of a fare-paying passenger. There is, therefore, no master-servant relationship between the parties. Furthermore, a contract existed between the passenger and the cruise line, thereby rendering the Jones Act analogy inapplicable.

Aside from the inapplicability of the Jones Act, ample case law supports the notion that a carrier may have an obligation to warn of reasonably foreseeable risks that exist beyond the gangplank. *Tradewind Transp. Co. v. Taylor*, 267 F.2d 185, 188 (9th Cir.), *cert. denied*, 361 U.S. 829, 80 S.Ct. 79, 4 L.Ed.2d 72 (1959); *Fleming v. Delta Airlines*, 359 F.Supp. 339, 341 (S.D.N.Y.1973). Such an obligation arises where the carrier knew, or should have known, of dangers in places where the passenger is likely to go. *Tradewind*, 267 F.2d at 187–88; *Gillmor v. Caribbean Cruise Line, Ltd.*, 789 F.Supp. 488, 491 (D.P.R.1992); *Carlisle*, 475 So.2d at 251.

██ There is no indication in the record that plaintiff was cautioned against sitting on the bollard. The fact that the dock was owned and controlled by the Mexican Government is of little consequence. *See Tradewind*, 267 F.2d at 188 (holding common carrier liable when passenger injured on premises owned and controlled by a third party). In addition, it cannot be said that the risk of the snapping mooring line was so apparent as to obviate defendant's duty to warn. *See Dangovich v. Isthmian Lines Inc.*, 218 F.Supp. 235, 238 (S.D.N.Y.1963), *aff'd*, 327 F.2d 355 (1964).

The plaintiff's expert on maritime matters, Neil Gallagher, stated that the risk of the parting mooring lines should have been apparent to the cruise line officers and passengers should not have been allowed to wait in its vicinity. *See* Kreindler Aff. ¶ 14, Exhibit G. Given the rough weather conditions and the exposed position of the dock to the open sea, it cannot be said as a matter of law that defendant was unaware of this potential hazard. Indeed, the presence on the dock of BRITANIS employees for the purpose of insuring the passengers' safety indicates that defendant may have been aware of potential hazards on the dock.

Defendant does not address any of these issues in its moving papers. Thus, there are material issues of fact regarding defendant's knowledge of the hazard and the foreseeability of plaintiff's resulting injury which preclude granting defendant's motion for summary judgment.

### B. CHOICE OF LAW

██ Defendant has also moved this Court for an order directing that all issues of liability in this matter be governed by Mexican law. The motion is denied; federal maritime law is applicable to the case at bar. Although defendant's motion could be procedurally barred, *see* Fed.R.Civ.P. 44.1[3], the merits of its request will be addressed.

██ Generally, the maritime tort jurisdiction of the federal courts depends upon the situs of the injury, with maritime law

---

**3.** Rule 44.1 of the Federal Rules of Civil Procedure requires that a party intending to raise an issue of foreign law do so "by pleadings or other reasonable notice." Fed.R.Civ.P. 44.1. Although the potential applicability of Mexican law was apparent at the pleading stage, defendant waited until the eve of trial before raising the issue with the Court. Thus, the Court doubts the timeliness of defendant's notice.

governing only those injuries which occur on navigable waters. *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 204–05, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971); *Braver v. Seabourn Cruise Line, Inc.,* 808 F.Supp. 1311, 1313–14 (E.D.Mich.1992). Docks and piers are considered extensions of land; the gangplank has served as a rough dividing line between the state and maritime jurisdictions. *Victory Carriers,* 404 U.S. at 205–08, 92 S.Ct. at 422. Thus, injuries occurring on a dock are not generally compensable under the maritime law.

The Admiralty Extension Act ("AEA"), however, states that an injury caused by a vessel on navigable waters is within United States maritime jurisdiction "notwithstanding that such damage has been done and consummated on land." 46 App.U.S.C. § 740. In *Loeber v. Bay Tankers, Inc.,* 924 F.2d 1340 (5th Cir.1991), *cert. denied,* 502 U.S. 819, 112 S.Ct. 78, 116 L.Ed.2d 51 (1991), a child on a dock was injured when a wake from a passing ship caused a vessel next to the dock to surge. The surge caused the vessel's accommodation ladder to roll across the dock and injure the child. The Court found that the AEA "clearly applie[d]." *Id.* at 1342.

As in *Loeber,* plaintiff's injury was caused by a vessel on navigable water since the snapped mooring line was attached to the MEXICO II. Therefore, despite the fact that the injury occurred on a dock, the AEA "clearly applies," and this case is properly under the admiralty jurisdiction of the United States.

Generally, once admiralty jurisdiction is established "all of the substantive rules and precepts peculiar to the law of the sea become applicable." *Austin v. Unarco Indus., Inc.,* 705 F.2d 1, 6 n. 1 (1st Cir.), *cert. dismissed,* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983), *quoting Branch v. Schumann,* 445 F.2d 175, 178 (5th Cir.1971). This proposition is true notwithstanding the diversity character of the litigation. *Austin,* 705 F.2d at 6 n. 1.; *Branch,* 445 F.2d at 178; *Pope and Talbot, Inc. v. Hawn,* 346 U.S. 406, 409–12, 74 S.Ct. 202, 205–06, 98 L.Ed. 143

(1953). As this case falls squarely within the maritime jurisdiction of the federal courts, all issues will be governed by federal maritime law. Defendant's motion for an order to the contrary is denied.

## C. JURY WAIVER

Although the federal court's authority to hear this action rests upon admiralty jurisdiction, jurisdiction can alternatively be based on diversity of citizenship [4]. *See* 28 U.S.C. § 1332. Indeed, plaintiff invoked the diversity jurisdiction of this Court when she filed her complaint and demanded a trial by jury. "[I]f a claim can be brought on the law side of a federal court, it is triable to a jury on demand, even though it is maritime in origin." *See* 9 Wright and Miller, Federal Practice and Procedure § 2315 at 72 (1971); *Austin,* 705 F.2d 1, 6 n. 1, *citing Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

■ Defendant has moved to strike plaintiff's demand for a jury trial. It argues that the clause contained in paragraph 8 of the cruise ticket operated as a valid waiver of plaintiff's right to have her case heard by a jury.

■ The right to a jury trial is guaranteed by the United States Constitution. U.S. Const. amend. VII. "It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally." *National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977), *citing Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) and *Heyman v. Kline,* 456 F.2d 123, 129 (2d Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972). A presumption exists against waiving the right to a jury trial. *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); *Hendrix,* 565 F.2d at 258. The burden of proving that a waiver was knowing and intentional rests with the party attempting to enforce the purported waiver. *Hendrix,* 565 F.2d at 258; *Feldman & Son, Ltd. v. Checker Motors Corp.,* 572 F.Supp.

---

**4.** Celebrity Cruises, Inc. is a Liberian Corporation with places of business in New York and Florida; plaintiff is a Massachusetts resident, and the amount in controversy exceeds $50,000.

310, 313 (S.D.N.Y.1983). Defendant has not met this burden.

 In addressing jury waiver clauses, courts have consistently examined the following factors: negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision. *See, e.g., Hendrix*, 565 F.2d at 258 (holding the jury waiver invalid where waiver was inconspicuous, appeared to be non-negotiable, and there was unequal bargaining power); *Orix Credit Alliance, Inc. v. Better Built Corp.*, 1990 WL 96992, *2 (S.D.N.Y.) (finding jury waiver valid where both parties were corporations and therefore not "stranger[s] to contract negotiations"); *Feldman & Son*, 572 F.Supp. at 313 (holding jury waiver valid where contract negotiations took place over a period of years, waiver was not inconspicuous and it was not a contract of adhesion).

Examining these factors, it is clear that defendant cannot overcome the presumption against a waiver. Defendant has not sought to prove, other than by referring to the placement and font size of the waiver clause, that the non-purchasing plaintiff was aware that she was relinquishing a constitutional right at the time she boarded the cruise ship. The contract, with its standardized language, was drafted by the defendant. Further, it was non-negotiable; plaintiff had no choice other than to accept the contract as written. Absent proof to the contrary, such an inequality in relative bargaining positions suggests that the asserted waiver was neither knowing nor intentional. *See Hendrix*, 565 F.2d at 258.

As defendant cannot make a showing that plaintiff knowingly and intentionally waived her constitutional right to a jury trial, defendant's motion to strike the jury demand is denied.[5]

**5.** Additionally, Plaintiff argues that the waiver violates 46 App.U.S.C. § 183c which forbids a shipowner or manager to insert in any agreement or contract any provision purporting to "lessen, weaken, or avoid the right of any claimant to a trial by court of competent jurisdiction on the question of liability for such loss or injury,

### III. CONCLUSION

For the reasons set forth above, the Court finds that factual questions exist that preclude granting defendant Celebrity's motion for summary judgment. The Court further holds that federal maritime law applies to this action, and the trial will be before a jury. The parties should file their proposed voir dire and requests to charge, in compliance with this Court's Individual Rules, within three weeks of the date of this opinion.

SO ORDERED.

or the measure of damages therefor." Because the defendant has not met its burden of proving that the waiver was valid, this Court need not reach the question whether 46 App.U.S.C. § 183c would nullify such a clause if it were valid.