**MORGAN GUARANTY TRUST COMPANY OF NEW YORK, Plaintiff,**

v.

**Stanford W. CRANE Jr., and Melissa Crane, Defendants.**

**No. 98 Civ. 6966 SHS.**

United States District Court, S.D. New York:

Feb. 8, 1999.

Howard B. Levi, Levi & Lubarsky, New York, NY, for plaintiff.

Jess Thomas Fardella, Lankler Siffert & Wohl, New York, NY, Bruce A. Langer, New York, NY, for defendants.

## OPINION AND ORDER

STEIN, District Judge.

Morgan Guaranty Trust Company of New York has brought this action to collect an alleged deficiency on a July 31, 1996 Demand Note issued by defendants Stanford W. Crane, Jr. and Melissa Crane. The Cranes counterclaim for damages resulting from, among other things, Morgan's alleged improper liquidation of stock pledged as collateral pursuant to the note. Morgan has now moved pursuant to Fed.R.Civ.P. 39 to strike defendant's jury demand. Plaintiff's motion is granted because this Court finds that defendants' written waiver of their right to trial by jury was both knowing and voluntary.

### Background

On July 31, 1996 the Cranes executed a note to Morgan in the amount of $1,305,000, pledging as collateral 2.48 million shares of stock of the Panda Project, Inc., a public company founded by Stanford Crane and

managed by the Cranes. The note's signature page contains a paragraph written in bold type and capital letters which states, "THE BORROWER HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR ANY AGREEMENT RECEIVED BY THE BANK IN CONNECTION HEREWITH."

The parties dispute the circumstances surrounding the signing of the note. The Cranes claim that Morgan officials, with whom they had had a year long relationship, "pressured" them to sign the note quickly; that they did not have an opportunity to review the document carefully and did not have their counsel review it; that the note appeared to be a "standard form, non-negotiable document;" that Morgan officials "gave [them] no indication that the terms of the note were negotiable;" that they did not "attempt to negotiate" any of the note's terms; that they have no recollection of seeing the note until immediately before signing it (although they do not dispute receiving a draft of the note approximately one week before it was signed); that they were urged to sign immediately with numerous assurances by Morgan officials that they would "protect [the Cranes'] best interest;" and that they did not notice the jury waiver provision set forth on the signature page. Melissa Crane Dec., dated January 5, 1999, ¶¶ 2, 6–9; Stanford Crane Dec., dated January 5, 1999, ¶ 2.

By contrast, Morgan claims that it did not pressure the Cranes to execute the note; that its terms were, in fact, negotiable; that the Cranes had possession of the document for approximately one week before its execution; and that Stanford Crane indicated that he would have counsel review it. Bruce Prolow Dec., dated January 14, 1999, ¶¶ 4–7; Rita E. Mockler Dec., dated January 14, 1999, ¶¶ 3–4. Mr. Crane denies the latter allegation.[1]

In August 1998, Morgan demanded payment of the outstanding principal and interest. When the Cranes did not pay the demand, Morgan sold the Panda stock in partial satisfaction of the note and commenced this action for the alleged deficiency of $332, 686. The Cranes have denied that Morgan was entitled to payment of the note and claim that Morgan's disposition of the Panda stock was not commercially reasonable and that the bank breached fiduciary duties it owed to them. They seek, among other things, roughly $7.89 million in compensatory damages.

*Discussion*

■ This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000. Moreover, the right to a jury trial in the federal courts is to be determined as a matter of federal law. *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963).

■ The parties to a contract may, by prior written agreement entered into knowingly and voluntarily, waive the right to a jury trial. *See, e.g., Herman Miller v. Thom Rock Realty Co.*, 46 F.3d 183, 189 (2d. Cir. 1995). However, the Seventh Amendment right to a jury is fundamental, and there is a presumption against its waiver. *National Equip., Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir.1977). Contract provisions waiving the right are narrowly construed, and the requirement of knowing, voluntary, intentional waiver is strictly applied. *Id.; N. Feldman & Son, Ltd. v. Checker Motors Corp.*, 572 F.Supp. 310, 313 (S.D.N.Y.1983). Nevertheless, jury trial waivers are common in loan agreements and loan guarantees, and these are regularly enforced. *See, e.g., National Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 667–8 (S.D.N.Y.1991), *aff'd sub nom., Yaeger v. National Westminster*, 962 F.2d 1 (2d Cir.1992); *Oei v. Citibank, N.A.*, 957 F.Supp. 492 (S.D.N.Y.1997); *Orix Credit Alliance, Inc. v. Better Built Corp.*, 1990 WL 96992 (S.D.N.Y. July 2, 1990).

■ The factors a court must consider in determining whether a contractual waiver of

---

1. Supplemental Declarations of the Cranes, dated January 21, 1999. Although Morgan objects to the submission of the supplemental declarations on the grounds that the present motion had already been fully briefed, the Court will consider these declarations.

a right to a jury trial was entered into knowingly and voluntarily include: 1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver. *Sullivan v. Ajax Navigation Corp.*, 881 F.Supp. 906, 911 (S.D.N.Y.1995). When the criteria outlined above have been met, the waiver has been deemed enforceable. *National Westminster Bank*, 130 B.R. at 667–8; *Oei*, 957 F.Supp. 492; *Orix*, 1990 WL 96992; *see also Hendrix*, 565 F.2d at 258; *Ajax Navigation*, 881 F.Supp. at 911.

In the oft cited case of *National Equip. Rental, Ltd. v. Hendrix*, the Court of Appeals for the Second Circuit held that a waiver provision, which was "literally buried in the eleventh paragraph of a fine print, sixteen clause lease agreement," was "set deeply and inconspicuously in the contract" and did not constitute a knowing and voluntary waiver of the lessee's right to a jury trial. 565 F.2d at 258 (citing *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 332–3, 84 S.Ct. 411, 423, 11 L.Ed.2d 354 (1964) (Black, J., dissenting)). Moreover, the Court found a "gross inequality of bargaining power" between the parties, since the lessee "did not have any choice but to accept the [ ] contract as written [by the lessor] if he was to get badly needed funds." *Id.* at 258 (citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). Finally, there was evidence in *Hendrix* that the lessee expressed his desire to consult an attorney about the contract, but was "dissuaded" from doing so. *Id.* at 256–7. The present case is quite different.

■ First, there is no indication that the terms of the note were not negotiable. Simply because the Cranes did not attempt to negotiate its provisions does not mean that, in fact, the waiver or other terms in the note were not negotiable. *See also Sullivan*, 881 F.Supp. at 911. In fact, in an application for a margin account with Morgan, dated July 25, 1995, Mr. Crane successfully negotiated changes to provisions drafted by Morgan.

Kimberly E. Wright Dec., dated January 13, 1999, Exh. C.

Second, the jury waiver provision was quite conspicuous. It was written in all capital letters in the sole paragraph on the signature page itself, and because it was the last sentence in that paragraph, it immediately preceded the Cranes' signatures. It was therefore not "set deeply and inconspicuously in the contract." *Hendrix*, 565 F.2d at 258; *see also National Westminster Bank*, 130 B.R. at 667 (finding waiver conspicuous when "set off in its own paragraph less than two inches above the signature line"); *see also Orix*, 1990 WL 96992 at *2 (S.D.N.Y. July 2, 1990). Moreover, the Cranes do not deny that they had possession of the note for approximately one week prior to its signing and therefore had sufficient time to read the waiver provision.

Third, although there was clearly a difference in bargaining power between the sides—as there would be between a major bank and virtually any two individuals—the Cranes were not financial neophytes. They had established relationships with a number of Morgan officials over approximately one year, and the fact that the Cranes had previously negotiated changes to agreements made with Morgan further demonstrates their ability to negotiate with the bank.

Fourth, the Cranes were experienced business people. Stanford Crane is an inventor and founder, President, Chief Executive Officer, and director of Panda, a technology company, whose stock is publicly traded on the NASDAQ National Market System. Melissa Crane has been Panda's Vice President of Strategic Business since 1997 and is now its Acting Chief Financial Officer. Moreover, the Cranes had previously engaged in such sophisticated business transactions as 1) a buy-out of other founding Panda shareholders in February 1996, 2) agreements to license certain intellectual and industrial property rights dated August 17, 1996 and October 28, 1996, and 3) the opening and maintenance of a margin account with Morgan in July 1995 with which the Cranes financed a number of stock trades. Mockler Dec ., ¶¶ 4–5 & Exhs. A & B.

*Conclusion*

Accordingly, this Court concludes that the Cranes knowingly and voluntarily waived their right to trial by jury, and plaintiff's motion to strike defendants' jury demand is granted.