VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street, PO Box 187
Burlington VT  05402
802-863-3467
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 418-6-20 Cncv



LBCMT 2007-C3 Dorset Street, LLC vs. Frank Cooper, Inc., William H. O'Brien, and Timothy O'Brien

## DECISION ON MOTION

This is an action on two commercial leases, each first negotiated in 2008 and extended in 2018. Defendants have filed a five-count counterclaim, asserting claims arising out of Plaintiff's conduct leading up to and following the execution of the lease extensions. Defendants also demanded trial by jury, in derogation of a waiver contained in each lease. Plaintiff has moved to strike this demand. The court grants the motion.

The leases are identical in all pertinent respects. Each includes the following provision:

> [T]he Tenant hereby waives any right to trial by jury in any action, proceeding or counterclaim brought by the Landlord against the Tenant on any matters whatsoever arising out of or in any way connected with this lease, the relationship of the Landlord and the Tenant, the Tenant's use or occupancy of the demised premises, and/or any claim of injury or damage.

Pl.'s Exhs. 1 and 2, § 20.3. Defendants argue that the court should not enforce this provision for two reasons: first, the waiver was not knowing and voluntary, and second, even if the provision is enforceable, several counts of the counterclaim are beyond its scope. Neither argument withstands scrutiny.

Both the United States and Vermont Constitutions guarantee the right to try civil matters before a jury. U.S. Const. amend. VII; Vt. Const. ch. II, § 38. A party may waive that right, however, by failing to make a timely demand. V.R.C.P. 38(d). Parties may also agree to arbitrate disputes. 12 V.S.A. § 5652(a). A prelitigation waiver of the right to a jury trial is enforceable if it is made knowingly, intentionally, and voluntarily. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007); *accord TD Bank v. Burke*, No. 563-12-14 Wmcv, 2015 WL 3935299, at *2 (Vt. Super. Ct. June 12, 2015) (Wesley, J.).

Order
418-6-20 Cncv LBCMT 2007-C3 Dorset Street, LLC vs. Frank Cooper, Inc. et al

Page **1** of **6**

Courts around the country are split on who bears the burden of proof on this question. Some courts place the burden on the party asserting the waiver. *See, e.g., Sullivan v. Ajax Navigation Corp.*, 881 F. Supp. 906, 910 (S.D.N.Y. 1995) ("The burden of proving that a waiver was knowing and intentional rests with the party attempting to enforce the purported waiver."). Others conclude that placing such a burden on the asserting party is at odds with basic contract principles and Rule 38. *See IFC Credit Corp.v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 993 (7th Cir. 2008) (citing with disapproval "[t]wo appellate decisions [that] have held that agreements to resolve disputes by bench trials are enforceable only if extra evidence of negotiation or consent supports that clause."); *K.M.C. Co. v. Irving Tr. Co.*, 757 F.2d 752, 758 (6th Cir. 1985) ("[I]n the context of an express contractual waiver the objecting party should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary."). Under Texas law, for example, "a conspicuous provision is prima facie evidence of a knowing and voluntary waiver and shifts the burden to the opposing party to rebut it." *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006). Regardless of where they place the burden, however, most courts—at least in jurisdictions that do not have *per se* bars— look to indicia of unconscionability in determining whether to enforce a contractual waiver of the right to trial by jury. *See, e.g., Wechsler v. Hunt Health Sys., Ltd.*, No. 94 CIV. 8294 (PKL), 2003 WL 21878815, at *3 (S.D.N.Y. Aug. 8, 2003) (quoting *Sullivan,* 881 F.Supp. at 911) (considering "negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision"); *Heston v. Int'l Med. Grp., Inc.*, 477 F. Supp. 3d 829, 833 (S.D. Ind. 2020) (applying two-prong test for unconscionability to jury trial waiver in insurance contract); *Pardee Constr. Co. v. Superior Ct.*, 100 Cal. App. 4th 1081, 1088 (Cal. App. 2002) (analyzing procedural and substantive unconscionability of judicial reference provisions, including waiver of jury trial, in home building contracts).

Because each of the parties' papers proceed on the assumption—unstated in Plaintiff's case— that the other party has the burden of proof, neither offers any evidence beyond the leases themselves. Defendants argue simply that because the waiver clauses are "hidden" or "buried" in the agreement, LBCMT cannot rely on the agreements alone to demonstrate that the waiver was knowing and voluntary. Def.'s Opposition to Pl.'s Mot. to Strike Jury Demand, 2 ("Plaintiff has not examined any of these factors, nor have they provided any declarations or affidavits to support their claim that the buried and hidden jury waiver is enforceable.").  Plaintiff in reply asserts, "under Vermont law it is well settled that 'courts must enforce contracts as they are written, and may not ignore their provisions.' " Pl.'s Reply to Def.'s Opp. to Mot. to Strike Jury Demand, 1 (citation omitted). The court

need not wade into the burden dispute, however, because there is sufficient evidence in the leases themselves to conclude that the waiver here was knowing and voluntary. *See Keybank Nat'l Assoc. v. Sports Odyssey, Inc.*, No. 249-4-09WRCV, 2009 WL 6565299 (Vt. Super. Ct. Sep. 2009) (Eaton, J.) ("Although this court agrees that there is tension between the general waiver rule and Rule 38(d), it is not necessary to decide in this opinion whether to adopt the 7th Circuit standard as a matter of Vermont law because the evidence here shows that the contractual waiver was knowing, intelligent, and voluntary.").

Defendants rely principally on a decision in which the Second Circuit Court of Appeals held unenforceable "a provision literally buried in the eleventh paragraph of a fine print, sixteen clause agreement." *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977). If this had been the end of that court's inquiry, its teachings might be persuasive here, as the waivers are found deep in a nearly fifty-page agreement. In that case, however, the court also considered evidence of "gross inequality in bargaining power" such that the weaker party had to "accept the NER contract as written if he was to get badly needed funds." *Id.* This emphasis on relative bargaining power is consistent with the approach taken by other courts applying a stricter standard for enforcement of jury waiver provisions. "In most of the cases in which the contractual term was not enforced, . . . the court found gross inequality in the bargaining positions of the parties. Where the court found no extreme bargaining disadvantage, jury trial waivers even in standardized contracts were enforced." *Chase Commercial Corp. v. Owen*, 32 Mass. App. Ct. 248, 255 (Mass. App. Ct. 1992) (citations omitted).

Vermont law, albeit silent on the precise question presented here, suggests a similar approach. If the terms of a contract are substantively unconscionable, that alone is sufficient to avoid its provisions. *Glassford v. BrickKicker*, 2011 VT 118, ¶ 13, 191 Vt. 1 (citing *Val Preda Leasing, Inc. v. Rodriguez,* 149 Vt. 129, 135 (1987)). There can be no suggestion, however, that a waiver of the right to jury trial is substantively unconscionable; even the *Hendrix* case, which stakes out the strongest anti-waiver stance this court has found, stops well short of such an assertion. Thus, the proper inquiry here focuses on procedural unconscionability. In that regard, in Vermont, an agreement is unconscionable if there is "evidence of some overreaching on the part of one of the parties such as that which results from an inequality in bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party." *Maglin v. Tschannerl*, 174 Vt. 39, 45–46 (2002) (quoting *Davis v. M.L.G. Corp.,* 712 P.2d 985, 991 (Colo.1986)) (emphasis deleted).

Here, there is no evidence of inequality of bargaining power; indeed the leases, on their faces, are commercial leases, and the strong inference is that both parties were sophisticated, with neither enjoying unfair bargaining power over the other. Moreover, while the leases are long and complicated, there is nothing about them that leads the court to conclude that they can be likened to "a classic example of a document which has been prepared with the intent that it neither be negotiated nor read." *Fairfield Leasing Corp. v. Techni-Graphics, Inc.*, 607 A.2d 703, 704 (N.J. Law. Div. 1992). Rather, if anything, the length and detail of the agreement invites if not compels close scrutiny of each and every provision. There is nothing here to suggest that Defendants neither had nor availed themselves of the opportunity to review the leases carefully before signing them—not once for each of the leases, but twice, when they renewed them.

Had Defendants taken this opportunity, they could not have missed the waiver provisions. The provisions are not "hidden" in such a way as to obscure their existence or meaning; while not warned, written in bold or larger font, or set off in a separate provision, neither are they "sandwiched in between effectively larger print." *Charles v. Nasser Heavy Equip., Inc.*, No. 1:06CV556-LG-JMR, 2008 WL 3992648, at *3 (S.D. Miss. Aug. 22, 2008). Nor are they written or presented in such a way as to obscure their meaning. Thus, it is fair to expect that any person preparing to enter into a commercial relationship of the kind contemplated by these leases would have carefully read and understood all parts of the agreement—including the jury waiver.

Nor have Defendants shown that a jury trial waiver is unreasonably favorable to Plaintiff. Parties on either side of all manner of disputes regularly waive jury trials in this court, and there is no evidence before the court that would suggest that under the circumstances, Defendants would be so disadvantaged by a bench trial that no reasonable party in their position would have agreed to such a provision unless that party's will had somehow been overborne. Rather, the evidence—the agreements themselves, the parties involved, and the renewal of the agreements—supports a determination that the waivers are enforceable. In signing the leases, Defendants knowingly, intentionally, and voluntarily waived their right to a trial by jury.

Neither does any part of Defendants' counterclaim escape the sweep of the waiver provisions. By its express term, the waiver clause provides that "the Tenant hereby waives any right to trial by jury in any action, proceeding or counterclaim brought by the Landlord against the tenant on any matters whatsoever arising out of or in any way connected with this lease, the relationship of the Landlord and the Tenant, the Tenant's use or occupancy of the demised premises, and/or any claim of injury or damage." Pl.'s Exhs. 1 and 2, § 20.3. Defendants' argument—that some of the counts of its

counterclaim arise not out of the leases, but from matters that predate the lease—founders on its misreading of this simple text. Basic rules of grammar compel the following reading of the waiver clause: the tenant waives jury trial (1) in any action, proceeding, or counterclaim that is (2) brought by the landlord against the tenant and (3) arises out of or is in any way connected with (a) the lease, (b) the parties' relationship, (c) the tenant's use or occupancy of the premises, or (d) any claim of injury or damage. Applied to this case, there is no doubt that this is (1) an action (2) brought by the landlord against the tenant. Equally, there is no doubt that the action arises out of (3) the lease. Finally, there is no doubt that Defendants' counterclaim was brought "in" this action. As a matter of simple textual analysis, therefore, Defendants' argument fails.

Even if Defendants' interpretation—effectively reading the phrase, "brought by the landlord against the tenant," out of the waiver clause—were correct, their argument would fail. They argue that the events on which some counts of their counterclaim rely predate the lease renewals and so do not arise out of the leases. This argument seems strained. Defendants allege that Plaintiff failed to disclose information and made fraudulent misrepresentations, all of which allegedly induced Defendants to renew their leases. Whether or not these allegations arise out of the lease, they certainly arise out of the parties' relationship, and they certainly assert a claim of injury or damage. Thus, even under Defendants' reading of the waiver clause, they have waived their right to jury on all counts of their counterclaim.

Moreover, the terms of the leases require that in a proceeding brought by LBCMT, Defendants may assert only compulsory counterclaims:

> the Tenant agrees not to interpose any non-compulsory counterclaim of whatever nature or description (or take any action having substantially the same effect) in any proceeding commenced by the Landlord for nonpayment of rent, minimum rent, percentage rent or any other amount due hereunder, provided the foregoing shall not be construed as a waiver of the right of the Tenant to assert and pursue separately any such claims in any separate action brought by the Tenant.

Pl.'s Exhs. 1 and 2, § 20.3. Logically, then, all counts of Defendants' counterclaim, to have been brought in this action, must also fall within even their interpretation of the scope of the waiver provision. A compulsory counterclaim "arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." *Pomfret Farms Ltd. P'ship v. Pomfret Assocs.*, 174 Vt. 280, 283 (2002). Here, the "aggregate of operative facts" in the complaint

arose out of the leases and the landlord-tenant relationship; so, too, did the "aggregate core of facts" that allegedly give rise to the rights asserted in the counterclaim. If they did not, Defendants could not have brought those claims in this action. Thus, the assertion of the claims here, and not in a separate action, is tantamount to an admission that they fall squarely within the ambit of the jury trial waiver clause.

### **ORDER**

The Motion to Strike Jury Demand is granted, as to all claims asserted by either side. The court notes in passing that the parties have yet to submit a proposed discovery/ADR. Accordingly, the clerk will set this matter for a discovery conference, which the parties may avoid by submitting an agreed schedule with a trial-ready date no later than March 15, 2022.

Samuel Hoar, Jr.
Superior Court Judge

So Ordered