22 So.3d 567 (2009)
Thomas LESLIE and Kathryn Barry, Appellants,
v.
CARNIVAL CORPORATION, etc., Appellee.
Laurine Spivey-Ferguson, Appellant,
v.
Carnival Corporation, etc., Appellee.
Grace Garcia, Appellant,
v.
Carnival Corporation, etc., Appellee.
Nos. 3D06-2228, 3D07-1009, 3D07-627, 3D06-2226.
District Court of Appeal of Florida, Third District.
November 25, 2009.
Romano, Eriksen & Cronin and Michael D. Eriksen, West Palm Beach; Coleman & Associates and Roderick F. Coleman, Boca Raton; Panter, Panter & Sampedro and David Sampedro, Miami, for appellants.
Mase & Lara and Rachel S. Cohen, Beverly D. Eisenstadt and Curtis J. Mase, Miami, for appellees.
Florida Justice Association and Burlington & Rockenbach and Philip M. Burlington, West Palm Beach, Amicus Curiae for appellants.
Florida Defense Lawyers Association and Stephens Lynn Klein Lacava, Hoffman & Puya and Roberta G. Mandel, Miami, Amicus Curiae for appellees.
*568 Before RAMIREZ, C.J., and COPE, GERSTEN, WELLS, SHEPHERD, SUAREZ, CORTIÑAS, ROTHENBERG, LAGOA, and SALTER.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
Subsequent to the release of the panel opinion in Leslie v. Carnival Corp., 22 So.3d 561, ___ (Fla. 3d DCA 2008), the Court consolidated this case with two others,[1] and by a majority vote of the active judges of this district, see Fla. R.App. P. 9.331(a), ordered that they be considered together en banc on the issue decided in the panel opinion. Upon consideration of the matter en banc, the Court is evenly divided. Judges Gersten, Wells, Shepherd, Suarez and Lagoa voted in favor of affirming the circuit court. Chief Judge Ramirez, and Judges Cope, Cortiñas, Rothenberg and Salter voted to reverse the decision of the circuit court. The effect of the vote is that the panel opinion stands. Id.
SHEPHERD, J., concurring.
I write further in this case only to offer the following additional considerations to balance those suggested by the dissent.[2]
The issue in these cases is whether the respective trial courts erred by enforcing a forum-selection clause in form contracts issued by Carnival Cruise Lines to four of its fare-paying customers, which requires that
all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise . . . shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida. . . .
(emphasis added). The dissent is disturbed that the natural workings of the clause deprive Florida citizens, foreign citizens, and all persons whose claims have a value of less than $75,000 of what it considers to be "a clear right to a jury trial in Florida's state courts . . . without notice or consent." See infra p. 576. The dissent finds the existence of this "right" in a federal statutethe historic Savings to Suitors Clause, now codified in the Judicial Code of the United States at 28 U.S.C. § 1333, but which has existed substantially unchanged in the Statutes of the United States since the inferior federal courts were established by the First Congress of the United States. See Judiciary Act of 1789 Ch. 20, § 9, 1 Stat. 77 (1789).[3] After *569 locating this right in federal statutory law, the dissent then argues, by reference to federal case law, that if an express contractual waiver of the right to a jury trial under the Seventh Amendment of the United States Constitution can only be enforced if made "knowingly and voluntarily," so also must the effect of a forum-selection clause in a maritime passenger cruise ticket, which, as the dissent admits, see infra p. 581, merely "inadvertently limit[s]" the ability of some passengers to obtain a jury trial. The dissent further argues the effect of the clause is simply "fundamentally unfair" within the meaning of federal maritime law as it applies to form cruise ship contracts of passage. I will treat each argument in turn.
First, the federal Savings to Suitors Clause confers no enforceable state court "right" to a jury trial or anything else on a maritime plaintiff. In fact, it is oxymoronic under our federal system of government to think that the United States Congress has the power to command a state court to exercise its jurisdiction to do anything. See U.S. Const. art. III, § 2; U.S. v. Butler, 297 U.S. 1, 68, 56 S.Ct. 312, 80 L.Ed. 477 (1936) ("[T]he United States is a government of delegated powers, [and] those [powers] not expressly granted, or reasonably to be implied . . . are reserved to the states or to the people."). Rather, history demonstrates that the Savings to Suitors Clause was inserted in the First Judiciary Act "probably, from abundant caution, lest the exclusive terms in which the [admiralty and maritime] power is conferred on the District Courts might be deemed to have taken away the concurrent remedy which had before existed." See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 444, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001) (quoting N.J. Steam Navigation Co. v. Merchants' Bank of Boston, 47 U.S. (6 How.) 344, 390, 12 L.Ed. 465 (1848)); see also supra p. 568-69, fn. 3. More importantly for our discussion here, it also is evident, when viewed in a historical context, the insertion of the Clause in the First Judiciary Act had nothing to do with any affinity of the First Congress for juries in admiralty or maritime matters. In fact, history proves just the opposite.
During the decade before the Constitutional Convention, most Americans had little experience with any courts which had jurisdiction beyond the boundaries of their own states. See Henry J. Borguignon, The Federal Key to the Judiciary Act of 1789, 46 S.C.L.Rev. 647, 652 (Summer 1995). However, some of the participants in the Convention knew first hand that admiralty jurisdiction had international ramifications. Id. at 653. Disputes involving capture and prize[4] were prevalent. *570 See Raymond S. August, Trial by Jury in a Court of Admiralty: A Constitutional Right buried under Historical Ignorance, 13 J. Mar. L. & Com. 149, 167-68 (1982); see also 1 Steven F. Friedell, Benedict on Admiralty § 81 (7th rev. ed. 2006). In many states, cases in admiralty were treated as most other cases, which meant their trial by jury. See August, 13 J. Mar. L. & Com. at 168-69. Procedure and jurisdiction in these courts were "uncontrolled and divergent." See 1 Thomas J. Schoenbaum, Admiralty and Maritime Law §§ 1-6 (4th ed.2004). Because juries were pre-disposed to decide these cases based upon local prejudicerather than by law or justicehostility, both interstate and international, manifested. David W. Robertson, Admiralty and Federalism 101 (1970). For these reasons, as the delegates to the Constitutional Convention arrived in Philadelphia in 1787, there was general agreement that a system of national admiralty courts was needed to ensure uniformity in the treatment of maritime cases involving both prize and instance. See Schoenbaum, supra at §§ 1-6.[5] The delegates' method for so doing was to include in the judicial article of the proposed Constitution a provision that "[t]he judicial Power shall extend to . . . all cases of admiralty and maritime jurisdiction." U.S. Const. art. III, § 2.
Except for the establishment of the United States Supreme Court, however, the organization of the federal courts was not self-executing. See U.S. Const. art. III, § 1. Rather, it fell to the First Congress to organize the lower courts of the United States. See Judiciary Act of 1789 Ch. 20, 1 Stat. 77 (1789). In so doing, the First Congress reposed in "district courts" the "exclusive cognizance of all civil causes of admiralty and maritime jurisdiction." Judiciary Act of 1789 Ch. 20, § 9, 1 Stat. 77 (1789). To enhance uniformity, the Congress further provided that "trials of issues in fact, in the [United States] District Courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury." Id. (emphasis added). In a bow to historical custom, however, the Congress also resolved to "sav[e] to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Id. When viewed in its historical context, it is self-evident the Savings to Suitors Clause was not inserted in the Judiciary Act of 1789 as some type of federal über guarantee of a particular state constitutional right. By asserting that "the grant [by that Congress] of concurrent jurisdiction to state courts under the `savings to suitors' provision essentially afforded [the cruise line passengers in this case] a fundamental right to a jury trial when filing certain admiralty and maritime claims in state court," see infra p. 579 (emphasis added), the dissent trifles with history.[6], [7]
*571 Nor have the federal jury waiver casesSullivan v. Ajax Navigation Corp., 881 F.Supp. 906, 908 (S.D.N.Y.1995), Ginsberg v. Silversea Cruises Ltd., No. 03-62141-CIV, 2004 WL 3656827, at *1 (S.D.Fla. Mar. 18, 2004) and McDonough v. Celebrity Cruises, Inc., No. 98 Civ. 1517(RWS), 2000 WL 341115, at *1 (S.D.N.Y. Mar. 30, 2000)which the dissent collectively hail as "[having] considered the issue before us," see infra p. 582, done so. Unlike our case, each of these cases is a federal diversity case in which the cruise line operator, by sentient design, sought to divest each and every one of its passenger customers their absolute Seventh Amendment constitutional right to demand a jury trial on the law side of the federal court in the event of a dispute through the use of an express contractual waiver. See Sullivan, 881 F.Supp. at 908 (ticket contract requiring any action against the cruise line be "instituted in the United States District Court for the Southern District of New York as an admiralty or maritime action without demand for a jury trial.") (emphasis added); Ginsberg, 2004 WL 3656827, at *1 (ticket contract providing "passenger agrees that all disputes and matters whatsoever arising in connection with the ticket shall be tried by the federal court `without jury.'") (emphasis added). McDonough, 2000 WL 341115, at *1 (involving an express jury waiver under "virtually identical circumstances" to Sullivan). In sharp contrast, there is no evidence of sentient design by Carnival in this case.[8] Equally important, there is no federal constitutional issue before us. See Waring v. Clarke, 46 U.S. (5 How.) 441, 460, 12 L.Ed. 226 (1847) ("[W]e cannot see how [admiralty and maritime *572 trials] are to be embraced in the [S]eventh [A]mendment of the [C]onstitution[.]"); Curtis v. Loether, 415 U.S. 189, 193, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) ("[T]he [Seventh] [A]mendment [should] be construed to embrace all suits which are not of equity and admiralty jurisdiction[.]"). These cases offer no assistance to the dissent in this case.
Second, the enforcement of this clause is not "fundamentally unfair." Again, we must remember that, as indicated by the dissent, these cases represent a narrow class of federal maritime disputes which the First Congress elected not to totally pre-empt from adjudication in state court. Accordingly, it is federal maritime law and not state substantive law or one's subjective judgment that governs the enforceability of the clause. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ("[T]his is a case in admiralty, and federal law governs the enforceability of the forum-selection clause we scrutinize."); Milanovich v. Costa Crociere, S.p.A., 954 F.2d 763, 766 (D.C.Cir.1992) (stating a cruise ticket is a maritime contract and the law to be applied is general federal maritime law).
It has only been in recent times that courts sitting in admiralty have had to examine the "fairness" of the substance of a forum selection clause in a maritime contract of passage because most courts have held such clauses to be void ab initio as "contrary to public policy." See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (The Bremen); see also Carbon Black Exp., Inc. v. The SS Monrosa, 254 F.2d 297, 300-01 (5th Cir.1958) (holding that "agreements in advance of controversy whose object is to oust the jurisdiction of the courts are contrary to public policy and will not be enforced"); Prince Steam-Shipping Co. v. Lehman, 39 F. 704, 704 (S.D.N.Y.1889) (holding the provision in the charter-party agreement "ousting the jurisdiction of all courts," except those in Philadelphia, was "against public policy, and void"). Just thirty-seven years ago, however, the United States Supreme Court in The Bremenexpanding on a decision just eight years earlier in which it upheld the enforcement of a contractual waiver of service of process, see Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) declared that forum-selection clauses are prima facie valid and enforceable under general maritime law.
In so holding, the Supreme Court in The Bremen was mindful that ocean-going vessels travel through many jurisdictions, thus potentially becoming subject to the laws of a particular jurisdiction based upon a fortuitous event of an accident. The Court reasoned that "[t]he elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." The Bremen, 407 U.S. at 13-14, 92 S.Ct. 1907. The Court continued, "in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside." Id. at 15, 92 S.Ct. 1907. The challenging party must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id.
In Shute, 499 U.S. at 593, 111 S.Ct. 1522 the United States Supreme Court further "refine[d] the analysis of The Bremen to account for the realities of form passage contracts" (emphasis added), such as the one in this case. Drawing upon the principles enunciated in The Bremen, the Court *573 in Shute concluded it was not "fundamentally unfair" under principles of general maritime law to enforce a non-negotiable predecessor clause to the one before us, which obligated Eulala Shute, a resident of Washington State who had suffered a shipboard injury off the coast of Mexico on a Carnival cruise she boarded in Los Angeles, California, to travel to Florida to bring her claim. Shute, 499 U.S. at 588, 111 S.Ct. 1522.[9] The Court articulated those principles as follows:
As an initial matter, we do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining. Including a reasonable forum clause in a form contract of this kind well may be permissible for several reasons: First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. Additionally, a clause establishing ex ante the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.
Id. at 593-94 (internal citations omitted) (emphasis added).
Evaluating the "reasonableness" of the forum clause at issue in that case, see id. at 592, 111 S.Ct. 1522 the Court went on to observe:
In this case, there is no indication that petitioner set Florida as the forum in which disputes were to be resolved as a means of discouraging cruise passengers from pursuing legitimate claims. Any suggestion of such a bad-faith motive is belied by two facts: Petitioner has its principal place of business in Florida, and many of its cruises depart from and return to Florida ports. Similarly, there is no evidence that petitioner obtained respondents' accession to the forum clause by fraud or overreaching. Finally, respondents have conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity. In the case before us, therefore, we conclude that the Court of Appeals erred in refusing to enforce the forum-selection clause.
Id. at 595, 111 S.Ct. 1522 (emphasis added). In our case, just as in Shute, there is no suggestion of bad faith motive on the part of Carnival. Nor is there any evidence of fraud or overreaching. Nor, finally, is there any evidence the plaintiffs will be mistreated or short-changed in any fashion by the judges of the United States District Court for the Southern District of Florida,[10] or that the judges will routinely *574 deny cruise ship passengers, such as these plaintiffs, jury trials if requested. The only evidence in the record of this case is that these plaintiffs and their successors will receive trials in courts specially established for this purpose, and which have more than 200 years of accumulated experience giving such trials. See Judiciary Act of 1789 Ch. 20, § 9, 1 Stat. 77 (1789) (establishing admiralty and maritime jurisdiction of federal courts). It is hard to fathom how this is "fundamentally unfair."
Furthermore, again under federal maritime law, the passengers in these cases received the notice to which they were legally entitled. Cruise ship tickets contain a multitude of conditions and limitations.[11] There is no requirement under general maritime law that ticket recipients be advised of any unstated ramification of those limitations. Under federal maritime law, the only requirement is that the cruise ship operator "reasonably communicate to . . . passenger[s] the existence [within the ticket] of important terms and conditions which affect legal rights[.]" Shankles v. Costa Armatori, S.P.A., 722 F.2d 861, 864 (1st Cir.1983) (emphasis added); Nash v. Kloster Cruise A/S, 901 F.2d 1565, 1566 (11th Cir.1990) (stating courts will enforce limitations in passenger cruise tickets if the ticket contract "provide[s] the passenger with reasonably adequate notice that the limit existed and formed part of the passenger contract"). The notice provided to the plaintiff passengers in this case appears in bold-faced type on the first page of their ticket contracts as follows:
IMPORTANT NOTICE TO GUESTS
THE GUEST TICKET CONTRACT IN THIS BOOKLET CONTAINS CONDITIONS ON NUMBERED PAGES 1 THROUGH 11 IN THE REAR PORTION OF THIS BOOKLET. YOUR ATTENTION IS DIRECTED TO THESE CONDITIONS, CERTAIN OF WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF *575 GUESTS TO ASSERT CLAIMS AGAINST THE CRUISE LINE, VESSEL OR THEIR AGENTS OR EMPLOYEES. PLEASE READ THE CONTRACT AND THESE TERMS AND RETAIN THE CONTRACT FOR FUTURE REFERENCE.
Federal maritime case law from two United States Courts of Appeal have approved the "reasonable communicativeness" of notices, which are indistinguishable in form, location on the ticket contract, and content from the notice received by the passengers in this case. See Marek v. Marpan Two, Inc., 817 F.2d 242, 246 (3d Cir.1987) (finding a notice printed in capital letters 1/16th inch high on the top of a cruise ticket folder stating "ACCEPTANCE OF THIS TICKET CONSTITUTES A CONTRACT. THE TERMS AND CONDITIONS OF WHICH ARE SET FORTH FULLY INSIDE. PLEASE READ CAREFULLY[,]" "reasonably communicate[d] the existence and importance of terms inside, including the time limits in ticket paragraph six" for bringing suit against the ship owner); Nash, 901 F.2d at 1567-68 (finding a bold-faced notice on the first page of a passenger ticket contract, denominated "CONTRACT OF PASSAGE," which bore "Passengers are advised to read the terms and conditions of the Passenger Contract Ticket set forth below. Acceptance of this Passenger Contract Ticket by Passenger shall constitute the agreement of Passenger to these Terms and Conditions[,]" constituted adequate notice of a one year time limitation for bringing suit contained in the contract) (emphasis added); see also Vega-Perez v. Carnival Cruise Lines, 361 F.Supp.2d 1, 3-4 (D.Puerto Rico 2005) (finding notice "reasonably communicated" simply where "[p]laintiffs presumably became aware of the forum selection clause at the moment they received the travel tickets"). In addition, the United States District Court for the Southern District of Florida has found adequate notice in a passenger ticket containing the same forum selection clause as challenged by the plaintiffs in this case. See Carnival Corp. v. Middleton, 941 So.2d 421, 424 (Fla. 3d DCA 2006) (acknowledging that the United States District Court for the Southern District of Florida had enforced a forum-selection clause identical to the one before us over an objection based upon inadequate jury waiver). The guiding judicial principle in each of these cases appears to be that once notified, a ticket-holder will read and inquire.[12]
The paean to the "fundamental right to jury trial" under the United States and Florida constitutions found in the dissent is poignant. See infra p. 580-81. Its reminderthat any waiver of this fundamental right must be made knowingly and voluntarilyis gripping. See infra p. 581-83. The dissent forgets, however, that we are not dealing here with a judicial doctrine *576 surrounding jury waiver clauses. Rather, we are dealing with a judicially created doctrine for determining when it is appropriate to enforce a forum-selection clause in a maritime case. Because of the constitutional dimension incorporated in a federal or state jury waiver, there exists greater procedural protection in the exercise of such waiver than is required for the enforcement of a forum-selection clause. See David H. Taylor & Sara M. Cliffe, Civil Procedure by Contract: A Convoluted Confluence of Private Contract and Public Procedure in Need of Congressional Control, 35 U. Rich. L.Rev. 1085, 1114-16 (2002). Unlike jury waiver clauses, forum selection clauses have come to have a favored status. See The Bremen, 407 U.S. at 10, 92 S.Ct. 1907. For this reason, our High Court has placed "a heavy burden of proof" on a party seeking to escape from his contract to make a "strong showing" that the clause should be set aside. Id. at 15, 17, 92 S.Ct. 1907. The showing required is "that trial in the contractual forum will be so gravely difficult and inconvenient that [a party] will for all practical purposes be deprived of his day in court." Id. at 18, 92 S.Ct. 1907. As previously demonstrated, it can hardly be argued that it is "unreasonable" under the circumstances to enforce the forum selection clause in this case.
In sum, the dissents' contentionnamely that the passenger-appellants in this case are somehow the victims of a violation of constitutional proportionshas no basis in law or fact. The passengers' grievance in this case lies with the United States Congress.[13]
GERSTEN, WELLS, SUAREZ, and LAGOA, JJ., concur.
CORTIÑAS, J., (dissenting).
This case involves a clear right to a jury trial in Florida's state courts that, through a choice of forum clause ("Forum Clause") in a cruise ticket contract, was taken away from the plaintiffs without notice or consent. In its pre-printed cruise tickets, which are provided to passengers after their purchase of a non-refundable cruise, Carnival includes a forum selection clause that provides as follows:
It is agreed by and between Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A., to the exclusion of the Courts of any other county, state or country.
(Emphasis added). This particular Forum Clause is unenforceable with regard to the federal forum, as it operates to deprive appellants of their constitutional right to a *577 jury trial without notice and without consent. Art. I, § 22, Fla. Const.
Each of the appellants' cases arises out of lawsuits filed against Carnival for personal injuries that allegedly occurred on Carnival ships. Kathryn Barry and Grace Garcia are both Florida citizens. Laurine Spivey-Ferguson is a citizen of Pennsylvania, and Thomas Leslie is a Canadian citizen. The relationship between the parties developed as one would expect; Carnival offered cruises for sale, the passengers purchased a cruise trip, and Carnival gave the passengers a ticket contract that memorialized the purchase and set forth its terms and conditions. Carnival provided neither the tickets nor the corresponding Forum Clause until after the purchase had been completed.
On its face, the Forum Clause appears to operate as any ordinary forum selection clause, that is, it restricts the filing of a lawsuit against Carnival to a particular forum, namely the United States District Court for the Southern District of Florida. However, because of the jurisdictional limitations of the federal courts, this Forum Clause actually operates to deprive certain passengers, including all of the appellants, of their right to a trial by jury without notification and consent.

The Jurisdictional Limitations of the Federal Courts
In addition to federal question jurisdiction pursuant to 28 U.S.C. § 1331, which is inapplicable here, federal court jurisdiction is limited to cases where there is diversity of citizenship among the parties and the claim exceeds $75,000. Title 28 of the United States Code provides in pertinent part:
§ 1332. Diversity of citizenship; amount in controversy; costs
(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between
(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state;
. . . .
(c) For purposes of this section and section 1441 of this title 
(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . .[14]
28 U.S.C. § 1332 (emphasis added).
In addition, federal courts also have jurisdiction over admiralty and maritime cases, including cases that involve the shipping industry and the transport of passengers by water. Title 28 also provides:
§ 1333. Admiralty, maritime and prize cases
The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
28 U.S.C. § 1333 (emphasis added).
However, in admiralty court there is no entitlement to a jury trial. See Fed. R.Civ.P. 38(e) ("These rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)."); See also Green v. Ross, 338 F.Supp. 365, 367 (S.D.Fla.1972) *578 ("Apart from any independent jurisdictional basis . . . an admiralty claimant has no jury trial right unless [plaintiff] sues under a statute which expressly provides it. . . .").
The jurisdictional limitations of the federal courts cause Florida residents to be precluded from the federal court's diversity jurisdiction and, accordingly, are restricted to the federal court's admiralty jurisdiction where there is no right to a jury trial. The federal court's jurisdictional limitations also preclude out-of-state plaintiffs whose claims do not exceed $75,000 from meeting the monetary threshold for diversity jurisdiction and, accordingly, these plaintiffs are similarly restricted to the federal court's admiralty jurisdiction, where there is no right to a jury trial.

Concurrent State Court Jurisdiction Over Certain Maritime Cases
State courts, through the "saving to suitors" provision of 28 U.S.C. § 1333, have concurrent jurisdiction to hear certain civil admiralty and maritime cases, such as the ones before us, that otherwise would have been limited to federal courts. The U.S. Supreme Court has clearly held that the "saving" clause "leave[s] state courts `competent' to adjudicate maritime causes of action in proceedings `in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation." Madruga v. Superior Court, 346 U.S. 556, 560-61, 74 S.Ct. 298, 98 L.Ed. 290 (1954). Thus, although federal courts have exclusive jurisdiction over in rem actions, federal and state courts have concurrent jurisdiction over in personam actions, see id. at 561, 74 S.Ct. 298 and the effect of the clause is to give an in personam plaintiff "the choice of proceeding in an ordinary civil action in a state or federal court, rather than bringing a libel in admiralty in federal court." 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3672 (2009). As Wright, Miller and Cooper explain, section 1333 gives the "suitor" the following options:
First, the claimant may invoke federal admiralty jurisdiction under the grant of original subject-matter jurisdiction over admiralty, maritime, and prize cases set out in Section 1333. Neither complete diversity of citizenship nor a minimum amount in controversy need be shown under the statute, but, if alternative bases of federal subject-matter jurisdiction exist, the plaintiff must affirmatively invoke admiralty jurisdiction. On the other hand, most plaintiffs will have no right to a trial by jury if they invoke the federal court's general admiralty and maritime jurisdiction.
Second, by virtue of the saving-to-suitors clause, the plaintiff also has the option of either asserting his claim [at] law in a state court or bringing suit in a United States district court. However, to pursue the latter choice, the general requirements of complete diversity of citizenship and jurisdictional amount in controversy must be satisfied.
Id. (citations omitted).
The United States Supreme Court explained the genesis of the "saving to suitors" provision in Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001), as follows:
Article III, § 2, of the United States Constitution vests federal courts with jurisdiction over all cases of admiralty and maritime jurisdiction. Section 9 of the Judiciary Act of 1789 codified this grant of exclusive original jurisdiction, but "sav[ed] to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Ch. 20, § 9, 1 Stat. 77. In the intervening years, Congress has revised the language *579 of the saving to suitors clause, but its substance has remained largely unchanged. See 28 U.S.C. §§ 41(3) and 371 Third (1940 ed.) ("saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it"); 28 U.S.C. § 1333(1) (1946 ed., Supp. II) ("saving to the libellant or petitioner in every case any other remedy to which he is otherwise entitled"); Act of May 24, 1949, ch. 139, § 79, 63 Stat. 101 ("saving to suitors in all cases all other remedies to which they are otherwise entitled"). The jurisdictional statute now states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (emphasis added).
Lewis, 531 U.S. at 443-44, 121 S.Ct. 993.
The Supreme Court clearly "defined the saving to suitors clause as a grant to state courts of in personam jurisdiction, concurrent with admiralty courts." Id. at 445, 121 S.Ct. 993 (citing Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 123, 44 S.Ct. 274, 68 L.Ed. 582 (1924)). The Court also explained that "[t]rial by jury is an obvious, but not exclusive, example of the remedies available to suitors." Lewis, 531 U.S. at 454-55, 121 S.Ct. 993 (citing Lake Tankers Corp. v. Henn, 354 U.S. 147, 153, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957)); Red Cross Line, 264 U.S. at 123-25, 44 S.Ct. 274). Because state courts, including Florida's, afford litigants a constitutional right to a jury trial, the grant of concurrent jurisdiction to state courts under the "saving to suitors" provision essentially afforded those parties a fundamental right to a jury trial when filing certain admiralty and maritime claims in state court.
The concurring opinion posits that the application of federal law in maritime cases somehow minimizes the clear existence of concurrent state court jurisdiction over cases such as these and the accompanying right to a jury trial in our state courts. Of course, there is not a single case in American jurisprudence which supports this position. If that were the case, in a properly filed "saving to suitors" case, Carnival would be able to avoid a jury trial in our state courts by resorting to the concurring opinion's "supremacy of federal maritime law" contrivance. No case has ever reached such a result.
Respectfully, the fact that federal law applies in maritime cases has little to do with this case or the issues before us. Instead, it is a red herring, worthy of momentary distraction without more. The concurring opinion alludes to the application of federal maritime law in construing the enforceability of a passenger cruise contract. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). It then concludes that, under federal maritime law, courts have enforced territorial forum selection clauses and, therefore, our Forum Clause must be enforced due to "supremacy of federal maritime law." However, this inquiry assumes we are dealing with an ordinary territorial choice-of-forum clause that merely selects a particular forum over another. There is no dispute that, absent the waiver of the right to a jury trial, which is implicated in our particular Forum Clause, the selected forum would be upheld and enforced as it has been in our prior decisions where the right to a jury trial was not raised on appeal. See Carnival Corp. v. Booth, 946 So.2d 1112, 1116 (Fla. 3d DCA 2006). Of course, under Shute, the Forum Clause would have been enforceable to the extent that it operated as a territorial forum selection clause requiring a plaintiff to bring his or her lawsuit *580 in Miami-Dade County, Florida. However, in this case, we are asked to review and examine the Forum Clause's further restriction to "the United States District Court for the Southern District of Florida in Miami." The same "reasonably communicated" standard, under federal maritime law, governs our review of this provision of the Forum Clause. Thus, the application of federal maritime law simply requires that we look to whether the notice of waiver of the right to a jury trial was "reasonably communicated." See Shute, 499 U.S. at 590, 111 S.Ct. 1522. Federal maritime law does not in any way diminish the clear concurrent state court jurisdiction over cases such as these or the concomitant right to a jury trial that exists in our state courts under the Florida Constitution.
Here, upon applying Carnival's Forum Clause to the jurisdictional restrictions of the federal courts, it is readily apparent that this is no ordinary forum selection clause. Instead, in the case of the appellants and other similar plaintiffs, Carnival's Forum Clause actually operates as a waiver of their right to a jury trial in state court without notice or consent. For example, Florida residents such as Barry and Garcia cannot avail themselves of the federal court's diversity jurisdiction and, thus, are restricted to the federal court's admiralty jurisdiction where there is no right to a jury trial. Similarly, out-of-state plaintiffs whose claims do not exceed $75,000, such as Spivey-Ferguson, do not meet the monetary threshold for diversity jurisdiction and are also restricted to the federal court's admiralty jurisdiction, where there is no right to a jury trial. Finally, foreign plaintiffs such as Leslie are restricted to the federal court's admiralty jurisdiction without the right to a jury trial because, for purposes of § 1332(a)(2), "[e]ven if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity i[s] nonetheless defeated if another alien party [e.g. Leslie] is present on the other side of the litigation." Universal Licensing Corp. v. Paola del Lungo, S.p.A., 293 F.3d 579, 581 (2d Cir.2002) (quoting Franceskin v. Credit Suisse, 214 F.3d 253, 258 (2d Cir.2000)).

Fundamental Right to a Jury Trial in Florida's State Courts
The Florida Constitution expressly provides for the right to trial by jury. Article I, Section 22, of the Florida Constitution provides:
§ 22. Trial by Jury
The right of trial by jury shall be secure to all and remain inviolate. The qualifications and the number of jurors, not fewer than six, shall be fixed by law.
Art. I, § 22, Fla. Const. Similarly, the Seventh Amendment of the United States Constitution provides:
In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.
Amend VII, U.S. Const.
The right to a jury trial has been recognized as "a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment." Jacob v. City of New York, 315 U.S. 752, 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1942). "A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts." Id. Moreover, "[t]he trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment *581 upon it has been watched with great jealousy." Chauffeurs, Teamsters and Helpers, Local, No. 391 v. Terry, 494 U.S. 558, 581, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (quoting Parsons v. Bedford, Breedlove and Robeson, 28 U.S. (3 Pet.) 433, 7 L.Ed. 732 (1830)).
Florida courts have also consistently highlighted the importance of the right to a trial by jury. "Questions as to the right to a jury trial should be resolved, if at all possible, in favor of the party seeking the jury trial, for that right is fundamentally guaranteed by the U.S. and Florida Constitutions." Hollywood, Inc. v. City of Hollywood, 321 So.2d 65, 71 (Fla.1975); see also Hansard Constr. Corp. v. Rite Aid of Fla., Inc., 783 So.2d 307, 308 (Fla. 4th DCA 2001) ("Questions regarding the right to a jury trial should be resolved in favor of a jury trial. . . .") (citing King Mountain Condo. Ass'n v. Gundlach, 425 So.2d 569 (Fla. 4th DCA 1982)).
Although fundamental, the right to a jury trial may be expressly waived between parties. It has been long established that "the right to trial by jury may be waived, and the waiver is enforceable so long as it is made `knowingly and voluntarily.'" Great Earth Int'l Franchising Corp. v. Milks Dev., 311 F.Supp.2d 419, 437 (S.D.N.Y.2004) (upholding enforcement of jury trial waiver as knowing and voluntary where litigant's counsel had drafted the agreement at issue and provision was in capital letters) (quoting Morgan Guar. Trust Co. v. Crane, 36 F.Supp.2d 602, 603 (S.D.N.Y.1999)); Allyn v. W. United Life Assurance Co., 347 F.Supp.2d 1246 (M.D.Fla.2004) (holding waiver enforceable where parties were highly educated and sophisticated businesspeople represented by counsel, the waiver was conspicuously disclosed in multiple provisions of the parties' contract and the provisions at issue had been bargained for and negotiated).
By agreeing to file suit against Carnival only in the Southern District of Florida, residents of Florida or foreign states and those with claims less than $75,000 are inadvertently limited to the federal court's admiralty jurisdiction and effectively deprived of their constitutional right to a jury trial. In addressing whether a waiver of the right to a jury trial is entered knowingly, voluntarily, and intelligently, one federal court has stated:
Courts consider a number of factors when determining whether a contractual jury trial waiver was entered into knowingly, voluntarily, and intelligently. Those factors include: (1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel. Although the factors play an important role in the Court's decision-making process, they are not determinative. Put another way, it is not whether any particular number of factors have been satisfied, but whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair.
Allyn, 347 F.Supp.2d 1246, 1252 (M.D.Fla. 2004) (citing Pers Travel Inc. v. Canal Square Assoc., 804 A.2d 1108, 1111 (D.C. 2002)). In evaluating jury waiver clauses, "courts have consistently examined the following factors: negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision." Sullivan v. Ajax Navigation Corp., 881 F.Supp. 906, 910 (S.D.N.Y.1995).
*582 The few cases that have considered the issue before us have similarly safeguarded the fundamental right to a jury trial where there was not a knowing waiver. In Ginsberg v. Silversea Cruises, Ltd., Inc., No. 03-62141-CIV, 2004 WL 3656827, (S.D.Fla. Mar. 18, 2004), a federal magistrate judge examined the enforceability of a provision waiving a jury trial present in a passenger ticket. Even though Ginsberg involved specific language that required cases to be tried in federal court "without jury," the issues are analogous. The Ginsberg court noted that "the Seventh Amendment right to a jury trial is fundamental and can only be relinquished knowingly and intentionally. A presumption exists against waiving the right to a jury trial." Id. at *1. In Sullivan, a federal court held that a forum selection clause containing language similar to the clause before us, was unenforceable where the cruise line operator was unable to prove that the passenger was aware she was relinquishing a constitutional right, the standardized forum selection language was drafted by the cruise line, and the passenger had no choice other than to accept the contract as written.[15]Sullivan, 881 F.Supp. at 911. Also, in McDonough v. Celebrity Cruises, Inc., No. 98 CIV. 1517(RWS), 2000 WL 341115 (S.D.N.Y. Mar. 30, 2000), the court rejected a cruise line's motion to strike a demand for jury trial on grounds that the "right to a jury is fundamental, `and that its protection can only be relinquished knowingly and intentionally.'" Id. at *1.
Similarly, in the cases before us, appellants essentially waived their right to a jury trial in state court without the ability to negotiate, without an explanation of the applicable jurisdictional technicalities, and without advisement prior to purchase. Appellants were not aware of the existence of the Forum Clause, much less the language contained therein, until after they purchased their non-refundable cruises. Furthermore, a determination that appellants knowingly waived their right to a jury trial requires of a lay person the multi-layered understanding of the intricacies of federal jurisdiction and the implication of limiting their claims to admiralty court. In addition, the lay person would necessarily have to know these concepts before receiving the Forum Clause giving rise to such jurisdictional implications.[16]
Carnival argues that courts have found certain clauses, such as arbitration provisions that essentially act as waivers of the right to a jury trial, to be enforceable *583 absent an explicit waiver of the right to trial by jury.[17]See Cooper v. MRM Inv. Co., 367 F.3d 493 (6th Cir.2004). Carnival ignores the fact that courts have consistently held that the loss of a right to trial by jury is a "fairly obvious consequence of an agreement to arbitrate." Henry v. Pizza Hut of Am., Inc., No. 6:07-cv-01128-Orl-DAB, 2007 WL 2827722, at *6 (M.D.Fla. Sept. 27, 2007) (quoting Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1371 (11th Cir.2005)); Robert Bosch Corp. v. ASC Inc., 195 Fed.Appx. 503, 508 (6th Cir.2006) ("[T]he loss of a right to a civil jury trial is a `fairly obvious consequence' of failing to object to an arbitration clause, and therefore, does not require an express waiver. . . .") (quoting Cooper, 367 F.3d at 506); Kaplan v. Kimball Homes Florida, Inc., 915 So.2d 755 (Fla. 2d DCA 2005) (finding that a specific waiver of the right to a jury trial was not necessary because "an agreement to arbitrate necessarily is understood to involve the relinquishment of the rights of access to courts and trial by jury."). Moreover, "[t]he Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes. . . ." Cremin v. Merrill Lynch, Pierce, Fenner Smith, Inc., 957 F.Supp. 1460, 1471 (N.D.Ill.1997); see also Caley v. Gulfstream Aerospace Corp., 428 F.3d at 1371. As such, although parties may freely contract to submit their claims to arbitration, it is generally accepted that they do so with the understanding that the right to a jury trial is being waived.
Carnival also argues that Florida courts and federal courts have upheld contractual forum selection clauses where the chosen forum does not allow the right to a jury trial. See Kanner v. Pan Am. Assistance, Inc., 807 So.2d 80 (Fla. 3d DCA 2001) (holding forum selection clause requiring that suit be brought in Colombia enforceable); Abbott Laboratories v. Takeda, 476 F.3d 421 (7th Cir.2007) (affirming dismissal of action where underlying forum selection clause required that suit be filed in Japan depending on who was the plaintiff); Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd., 462 F.Supp.2d 1098 (C.D.Cal. 2006) (upholding forum selection clause requiring litigation in Tokyo). We find these cases unpersuasive and also distinguishable. When parties to a contract specifically agree to bring their claims in a jurisdiction outside of the United States, they cannot reasonably expect that they will enjoy the same rights and laws available under the American legal system. As the Abbott court noted, "[w]hen it signed the *584 [agreement containing the forum selection clause], [plaintiff] . . . could and no doubt did consider the potential inconvenience of litigating in Japan, but decided to risk it. It is bound by its choice." Abbott, 476 F.3d at 426. In the cases before us, appellants remained within the American legal system and had no reason to believe or assume that they would be deprived of their fundamental right to a jury trial.
Finally, Carnival posits that the Forum Clause should be enforced because Carnival assures us that they will not oppose any plaintiff's request for a jury trial in admiralty court.[18] Again, Carnival misses the point. A petition for a jury trial, even if unopposed, is not akin to a fundamental right to a trial by jury. Fundamental rights, having their origin in the express terms of the United States and Florida constitutions or necessarily implied from those terms, are the most paramount of rights that may exist. See Fox v. City of Pompano Beach, 984 So.2d 664, 668 (Fla. 4th DCA 2008) ("The right to a trial by jury is a fundamental right under both the United States and Florida constitutions."); Blair v. State, 698 So.2d 1210, 1212-13 (Fla.1997).[19] Accordingly, to dilute a fundamental *585 right to a jury trial by equating it with a mere request is to deny its very existence.
Even with Carnival's consent, the possibility of a jury trial in an admiralty matter remains entirely discretionary with the federal district court. Federal Rule of Civil Procedure 39(c) provides:
Advisory Jury; Jury Trial by Consent. In an action not triable of right by a jury, the court, on motion or on its own:
(1) may try any issue with an advisory jury; or
(2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial.
Fed.R.Civ.P. 39(c)(1)-(2) (emphasis added). Rule 39(c) is permissive and the federal district court may  or may not  grant a jury trial even when Carnival has consented. Furthermore, any supposed acquiescence by Carnival to a jury trial in admiralty court would be of little consequence in multiple defendant cases since other parties would not be bound by Carnival's agreement.
In Shute, the United States Supreme Court said, "[i]t bears emphasis that forum-selection clauses contained in form passage contracts are subject to scrutiny for fundamental fairness." Shute, 499 U.S. at 595, 111 S.Ct. 1522. The federal portion of the Forum Clause in this case is fundamentally unfair because it eliminates trial by jury as a matter of right for any passenger who is unable to establish federal jurisdiction on the basis of diversity of citizenship. The Supreme Court went on to say:
Similarly, there is no evidence that petitioner obtained respondents' accession to the forum clause by fraud or overreaching. Finally, respondents have conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity.
Id. In the cases before us, by contrast, there is overreaching because the effect of the Forum Clause was not disclosed and, in any event, this contractual provision was not provided to the passengers until they had already purchased their tickets.
For the foregoing reasons, we would grant the motion for rehearing en banc and find the federal court portion of the Forum Clause at issue here is unenforceable as it operates to deprive appellants of their constitutional right to a jury trial without notice and without consent. The federal portion of the Forum Clause is clearly infirm and unenforceable with regard to passengers who are unable to establish federal jurisdiction on the basis of diversity of citizenship. We would reverse the trial courts' orders granting dismissal and allow the cases to proceed in the circuit court.
RAMIREZ, C.J., and COPE, ROTHENBERG, and SALTER, JJ., concur.
NOTES
[1] Garcia v. Carnival Corp., No. 3D07-627, 2008 WL 440997, at *1 (Fla. 3d DCA Feb. 20, 2008); and Spivey-Ferguson v. Carnival Corp., No. 3D07-1009, 2008 WL 373233, at *1 (Fla. 3d DCA Feb. 13, 2008).
[2] I would be remiss if I did not point out that my first preference in these cases would have been to deny the motion for rehearing en banc on the ground that it fails to meet the threshold for rehearing en banc as required by Florida Rule of Appellate Procedure 9.331. See Univ. of Miami v. Wilson, 948 So.2d 774, 790-91 (Fla. 3d DCA 2006) (Shepherd, J., concurring). Having been obviously unpersuasive on this point, I proceed to the merits.
[3] The Savings to Suitors Clause appeared as followed in section 9 of the Judiciary Act of 1789:

That the district courts shall have, exclusively of the courts of the several States . . . exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade of the United States, where the seizures are made, on waters which are navigable from the sea by vessels of ten or more tons burthen, within their respective districts as well as upon the high seas; saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it. . . .
Since 1789, there have been just three changes in the Clause. See 28 U.S.C. §§ 41(3) and 371(3) (1940 ed.) (substituting the words "any other remedy to which he is otherwise entitled" for the words "the right of a common-law remedy where the common law is competent to give it"); Act of June 25, 1948, c. 646, 62 Stat. 931 ("saving to the libellant or petitioner in all cases all other remedies to which they are otherwise entitled"); Act of May 24, 1949, ch. 139, § 79, 63 Stat. 101 ("saving to suitors in all cases all other remedies to which they are otherwise entitled").
[4] Prize in maritime law refers to the private property of an enemy that a belligerent captures on the high seas or that a belligerent authorizes to be taken by a privateer on its behalf. The national interest in the proper adjudication of cases of capture and prize is highlighted by the fact that the first national court created by the United States Congress was the Court of Appeals in Cases of Capture. See Comment, Powell v. Offshore Navigation, Inc.: Jurisdiction Over Maritime Claims and the Rights to Trial by Jury, 82 Col. L.Rev. 784, 808 n. 164 (1982).
[5] On this point, Alexander Hamilton appears to have captured the sentiment, if not the spirit, of the day when he wrote in Federalist 80: "[T]he most bigoted idolizers of State authority have not thus far shown a disposition to deny the national judiciary the cognizances of maritime causes. These so generally depend upon the laws of nations, and so commonly affect the rights of foreigners, that they fall within the considerations which are relative to the public peace. The most important of them are, by the present Confederation, submitted to federal jurisdiction." The Federalist, A Commentary on the Constitution of the United States: Alexander Hamilton, James Madison and John Jay 511 (Robert Scigliano, ed., Random House 2000)(1787).
[6] The dissent tries to draw some solace from a single line in Lewis, 531 U.S. at 445, 121 S.Ct. 993, which characterizes the Savings to Suitors Clause as a "grant to state courts of in personam jurisdiction, concurrent with admiralty courts." See infra p. 579. As I have previously indicated, however, see supra p. 569, the Lewis Court expressly recognizes just a few lines earlier, see Lewis, 531 U.S. at 444, 121 S.Ct. 993, that the Clause was "inserted probably, from abundant caution" lest Section 9 of the First Judiciary Act be misinterpreted to operate as a pre-emption clause. A casual perusal of the passages both before and after the line seized upon by the dissent makes plain that Lewis cannot be read so literally.
[7] While it may seem counter-intuitive today, the proceedings of the Constitutional Convention reflect that the proponents of enshrining an express right to a jury trial in the Constitution in civil cases, eventually accomplished by the adoption of the Seventh Amendment, were not motivated so much by a felt need to memorialize a revered right as out of a concern that the lifetime appointment of federal judges would make them partial to governmental interests. See Deborah J. Matties, A Case for Judicial Self-Restraint in Interpreting Contactual Jury Waivers in Federal Court, 65 Geo. Wash. L. Rev 431, 435-437 (March 1997); see also Benjamin V. Madison, III, Trial by Jury or By Military Tribunal for Accused Terrorist Detainees Facing the Death Penalty? An Examination of Principles that Transcend the U.S. Constitution, 17 U. Fla. J.L. & Pub. Pol'y 347, 393 (Dec.2006).
[8] Carnival's prior forum selection clause permitted its passengers to file suit in any court located in the State of Florida. See infra p. 573, fn. 9. Carnival states it modified the clause because experience had proven the United States District Court for the Southern District of Florida to be a "more efficient" forum for the resolution of passenger disputes. According to Carnival, the efficiencies include the availability of electronic filing, strict Federal Rule of Civil Procedure Rule 26 discovery requirements, limitations on the number of depositions, strict pre-trial calendar deadlines and trial settings, and a more vigorous summary judgment procedure for disposal of meritless claims. One might also consider that concentrating this federal maritime litigation before the twenty-two active judges of the United States District for the Southern District of Florida, rather than spreading the cases more broadly, fosters the creation of a cadre of professionals for whom the law of the sea is a familiar sight. See Schoenbaum, supra, at §§ 4-4, 4-5 (discussing the wide variety of in rem and statutory proceedings over which the federal courts have exclusive jurisdiction).
[9] The clause in Shute required that "all disputes. . . arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country." Id. at 587-88, 111 S.Ct. 1522.
[10] Although cast in the idiom of jury sanctity, I deduce from the arguments made that the plaintiffs' true concern is that the judges of the United States District Court somehow will be less favorable to them than a jury on issues of liability and compensation. However, analyses of empirical data from federal cases compiled by the Administrative Office of the United States Courts strongly suggest otherwise. See, e.g., Theodore Eisenberg, Judicial Decisionmaking in Federal Products Liability Cases, 1978-1997, 49 DePaul L.Rev. 323, 323 (1999) ("The striking difference in trial win rates between judge and jury trials continues. Plaintiffs prevail in over 40% of the judge trials and only about 30% of the jury trials."); Carol J. DeFrances & Marika F.X. Litras, Civil Trial Cases and Verdicts in Large Counties, 1996, Bur. Justice Stats. Bul., Sept. 1999, at 1, 6 ("Plaintiffs were more likely to win in bench trial cases (62%) than in jury trial cases (49%)."); see also Thomas A. Eaton, et al., Another Brick in the Wall: An Empirical Look at Georgia Tort Litigation in the 1990s, 34 Ga. L.Rev. 1049, 1084 (2000).
[11] The conditions and limitations in these passengers' ticket contracts ranged from the specificlimitations on liability for use of the ship's recreational and athletic equipmentto a final catch-all provision stating:

Carnival shall have the benefit of all Statutes of the United States providing for limitation and exoneration from liability and the procedures provide (sic) thereby, including but not limited to Sections 4282, 4282A, 4283, 4284, 4285 and 4286 of the Revised Statutes of the United States of America (USCA citation omitted); as well as all restrictions or exemptions from liability, when applicable, under the laws of any foreign nation.
One might wonder whether this provision is any more enigmatic to the ordinary cruise ship passenger than the forum selection clause that occupies our time in this case, or whether the effects of either clause would be a determining factor to a cruise decision by the dissent's hypothetically fully conversant cruise passenger.
[12] It should also be noted that Carnival's cruise ticket contract was available for viewing on Carnival's website during the time these passengers purchased their cruise vacations, and that the Welcome Aboard brochure included in the ticket packet provided to each passenger before embarking (containing the ticket contract, boarding pass(es), brochure, luggage tags and such other items as are needed pre-embarkation), meticulously and prominently directed each booked passenger to the terms and conditions of passage in the ticket contract as follows:

If you look at the cover of your ticket booklet, you will see an "Important Notice to Guests." This notice directs your attention to the terms and conditions of your contract. It is important to read this and become acquainted with the specific conditions and limitations of your passage.
[13] The Congress is well aware of the prohibition which is the subject matter of the cruise passengers' angst in this case. On two occasions, once in 1939 and then again in 1954, the Congress considered amending the Judiciary Act of 1789 to authorize jury trials in admiralty and maritime cases, but for reasons of its own has not done so. See Kenneth H. Volk, Case Note, Seamen's Personal Injury Claims-Suite in Admiralty-Jury Trial, 22 J. Mar. L. & Com. 607, 611 & n. 21 (1991) (citing House Committee on the Judiciary, H.R. 2723, 76th Cong., 1 Sess; S. Rep. 2351, 83d Cong., 2d Sess. (1954)). Some cogently argue, even today, that the prohibition remains warranted. See Gary T. Sacks & Neal W. Settergren, Juries Should Not be Trusted to Decide Admiralty Cases, 34 J. Mar. L. & Com. 163 (Jan.2003).
[14] It is undisputed that Carnival is a Panama corporation but has its principal place of business in Miami, Florida.
[15] The passenger ticket in Sullivan required that any action against the carrier must be "instituted in the United States District Court for the Southern District of New York as an admiralty or maritime action without demand for jury trial." Sullivan, 881 F.Supp. at 908. The cover of the ticket also specified "IMPORTANT NOTICE: Please read the terms and conditions of transportation in this ticket which is a contract affecting your legal rights." Id.
[16] Although appellants contend that a waiver of jury trial is unenforceable under federal maritime law, the resolution of these cases does not require us to decide that issue. See N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 640 (Fla.2003) ("Pursuant to the doctrine of judicial restraint, we decline to address petitioners' remaining constitutional claims because resolution of those claims is unnecessary for the disposition of this case."); Lake Towers, Inc. v. Axelrod, 216 So.2d 86, 87 (Fla. 4th DCA 1968) ("We expressly [d]o not decide the sufficiency of the complaint or of the lis pendens, or any of the other matters raised by defendant, since such issues are not necessary to the disposition of this matter."); see also PDK Labs., Inc. v. United States DEA, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring) ("This is a sufficient ground for deciding this case, and the cardinal principle of judicial restraint  if it is not necessary to decide more, it is necessary not to decide more  counsels us to go no further.").
[17] We note that an arbitration clause in a typical cruise contract would be prohibited under Title 46, United States Code, Section 30509(a)(1)(B), which provides, in part:

§ 30509. Provisions limiting liability for personal injury or death
(a) Prohibition. 
(1) In general.The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting 
. . . .
(B) the right of a claimant for personal injury or death to a trial by court of competent jurisdiction.
46 U.S.C. § 30509 (emphasis added). Thus, the clear and unambiguous language of Section 30509(a)(1)(B) would forbid Carnival from including an arbitration clause in its cruise contracts since such a clause would limit "the right of a claimant for personal injury or death to a trial by court of competent jurisdiction." 46 U.S.C. § 30509(a)(1)(B). Because an arbitration panel is not a court of competent jurisdiction, an arbitration clause in a case such as this one would be unenforceable.
[18] However, we note that Carnival has opposed other plaintiffs' requests for a jury trial in federal admiralty court in the past. See Carnival's Motion to Strike Plaintiffs' Demand for Jury Trial and Memorandum of Law in Support Thereof in the case styled Hayes v. Carnival Corp., d/b/a Carnival Cruise Line and/or Carnival, Case No.: 06-20425 Civ-King/Garber (S.D.Fla.2006). At oral argument, Carnival stated that it has changed its corporate policy and will take all steps necessary to consent to jury trials brought in admiralty under the Forum Clause. See Fed. R.Civ.P. 39(c)(2).
[19] In Blair, Justice Anstead elaborated on the importance of the right to a jury trial by emphasizing its historical significance as follows:

Before addressing the facts of this case, we review and reaffirm the importance of the right to trial by jury in the United States and Florida. From the outset, the earliest American colonists "cherished the right to a trial by jury." Douglas E. Lahammer, Note, The Federal Constitutional Right to Trial by Jury for The Offense of Driving While Intoxicated, 73 Minn. L.Rev. 122, 125 n. 19 (1988). As evidence of this strong sentiment, the right to trial by jury was incorporated into King James I's Instructions for the Government of the Colony of Virginia, 1606; the Massachusetts Body of Liberties, 1628; the Concessions and Agreements of West New Jersey, 1677; and the Frame of Government of Pennsylvania, 1682. Lloyd E. Moore, The Jury, Tool of Kings, Palladium of Liberty 97-99 (1973); Sources of Our Liberties 37, 74, 185, 217 (Richard L. Perry ed., 1959).
Later, this right was of paramount importance to the Founding Fathers. Indeed, "[t]rial by jury, as instituted in England, was to the Founders an integral part of a judicial system aimed at achieving justice." Colleen P. Murphy, Integrating the Constitutional Authority of Civil and Criminal Juries, 61 Geo. Wash. L.Rev. 723, 742 (1993). Accordingly, the Founders, mindful of "royal encroachments on jury trial" and fearful of leaving this precious right to the whims of legislative prerogative, included protection of the right in the Declaration of Independence and included three separate provisions in the Constitution for the right to jury trial: Article III and later the Sixth and Seventh Amendments. Id. at 744-45. In addition, the "constitutions of the original 13 states and of every state later admitted to the United States contained some form of a jury trial right." Robert P. Connolly, Note, The Petty Offense Exception and the Right to a Jury Trial, 48 Fordham L.Rev. 205, 212 n. 51 (1979). No state has ever removed the right from its constitution. Duncan v. Louisiana, 391 U.S. 145, 153-54, 88 S.Ct. 1444, 1449-50, 20 L.Ed.2d 491 (1968). The right extends equally to criminal and civil cases, except in Louisiana, Colorado, and Wyoming, which only guarantee the right to trial by jury in criminal cases. See Henry H. Perritt, Jr., "And the Whole Earth Was of One Language"  A Broad View of Dispute Resolution, 29 Vill. L.Rev. 1221, 1320 n. 554 (1984); art. I, § 17, La. Const.; art. II, § 23, Colo. Const.; art. I, § 9, Wyo. Const.
Blair, 698 So.2d at 1212-13 (footnotes omitted).